## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CTN HOLDINGS, Inc., *et al*.,<br><br>Debtors.[1]<br><br>———————————————<br><br>JAMI B. NIMEROFF, as chapter 7 trustee for CTN Holdings, Inc., *et al*.,<br><br>Plaintiff,<br><br>v.<br><br>DONALD R. KARR; MILLER FAMILY LEGACY LLC; LOUIS R. MILLER; ALS REVOCABLE TRUST; EMERGING IMPACT FUND II, LP; PRAESUMO HOLDINGS, LLC; RAVI SARIN; PAUL SOROS 2010 FAMILY TRUST A; CHICAGO ATLANTIC FINANCE LLC; CHICAGO ATLANTIC CREDIT COMPANY, LLC; and CHICAGO ATLANTIC OPPORTUNITY FINANCE LLC,<br><br>Defendants. | Chapter 7<br><br>Case No. 25-10603 (TMH)<br><br><br><br><br><br>Adv. Pro. No.: |

**CHAPTER 7 TRUSTEE'S VERIFIED COMPLAINT FOR DECLARATORY RELIEF UNDER SECTION 362(A) OF THE BANKRUPTCY CODE, INJUNCTIVE RELIEF UNDER SECTIONS 105(A) AND 362(A) OF THE BANKRUPTCY CODE, AND A PRELIMINARY INJUNCTION UNDER RULE 7065 OF THE FEDERAL RULES OF <u>BANKRUPTCY PROCEDURE</u>**

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of the Debtors' federal tax identification number, are: CTN Holdings, Inc. (9122), CTN SPV Holdings, LLC (8689), Make Earth Green Again, LLC (4441), Aspiration QFZ, LLC (1532), Aspiration Fund Adviser, LLC (4214). Catona Climate Solutions, LLC (3375), and Zero Carbon Holdings, LLC (1679). The mailing address for the Debtors is 548 Market Street, PMB 72015, San Francisco, CA 94104-5401.

Plaintiff Jami B. Nimeroff (the "Plaintiff" or the "Trustee"), solely in her capacity as the Chapter 7 Trustee of the bankruptcy estates of CTN Holdings, Inc., *et al.* (collectively, the "Debtors"), by and through her undersigned counsel, hereby submits this Verified Complaint for Declaratory and Injunctive Relief (the "Complaint") against Defendants Donald R. Karr; Miller Family Legacy LLC; Louis R. Miller; ALS Revocable Trust; Emerging Impact Fund II, LP; Praesumo Holdings, LLC; Ravi Sarin; Paul Soros 2010 Family Trust A; Chicago Atlantic Finance LLC; Chicago Atlantic Credit Company, LLC; and Chicago Atlantic Opportunity Finance LLC (collectively, the "Defendants" or the "Karr Action Plaintiffs "), pursuant to Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and sections 105(a) and 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and states as follows:

## BACKGROUND

1. On March 30, 2025 (the "Petition Date"), CTN Holdings, Inc., CTN SPV Holdings, LLC, Make Earth Green Again, LLC, Aspiration QFZ, LLC, Aspiration Fund Adviser, LLC, Catona Climate Solutions, LLC, and Zero Carbon Holdings, LLC each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On May 22, 2025, Carbon Sequestration III, LLC filed a Chapter 11 petition for relief under chapter 11 of the Bankruptcy Code (hereinafter, collectively "CTN" or the "Debtors"). The foregoing entities are referred to herein collectively as the "Debtors."

2. On August 7, 2025, the Debtors' chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code. Thereafter, the Office of the United states Trustee for Region 3 appointed Jami B. Nimeroff as the Chapter 7 Trustee in these cases.

3.      Joseph Sanberg ("Sanberg") was a co-founder of the Debtors and is a former CEO and board member of the Debtors.  Andrei Cherney was also a co-founder of the Debtors.  The Debtors, and CTN Holdings, Inc. ("Catona") in particular, held themselves out as financial technology and sustainability companies that purported to trade in carbon emission credits and related enterprises.  In fact, the entire scheme was a fraud on investors

4.      On March 25, 2025, the United States Attorney for the Central District of California ("U.S. Attorney") filed an "Indictment" in the United States District Court for the Central District of California charging Sanberg with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and 18 U.S.C. § 981(a)(1)(C).  On August 20, 2025, the U.S. Attorney filed a "First Superseding Information" charging Sanberg with two counts of wire fraud in violation of 18 U.S.C. § 1343.  Each seeks criminal forfeiture of Sanberg's assets pursuant to 28 U.S.C. § 2461(c). A true and correct copy of the Indictment is attached hereto as **Exhibit A,** and a true and correct copy of the First Superseding Information is attached hereto as **Exhibit B**.[2]

5.      The Indictment and First Superseding Information allege that Sanberg and others defrauded investors and lenders of approximately $248 million through the use of fraudulent financial statements, phony sales and revenue figures and other fraudulent information to induce those victims to make loans to Sanberg and invest in various of the Debtors, in conspiracy with, among others, defendant Ibrahim Ameen AlHusseini ("AlHusseini").

6.      Among other allegations, the United States alleges that Sanberg and AlHusseini orchestrated a phony put option contract whereby AlHusseini would purchase Sanberg's stock in "Company A," upon information and belief, Catona, if Sanberg defaulted on a $55 million loan from

---

[2] The Trustee does not allege the truth of the factual assertions contained in the Indictment or the First Superseding Information, but references those filings to establish the factual predicate relied upon by the Defendants in the civil action described below and to demonstrate the generalized nature of the claims asserted therein.

"Investor Fund A."  This put contract was supposed to guarantee repayment of that loan on default. Sanberg and AlHusseini provided false brokerage statements to substantiate AlHusseini's ability to perform the put option. Later, Sanberg refinanced that loan with "Investor Fund B" using the same fraudulent scheme.

7.      Apparently based upon the Indictment and their own investigation, on July 9, 2025, the Karr Action Plaintiffs commenced an action in the Superior Court of the State of California, County of Los Angeles, Central District, LLC by filing a Complaint and thereafter a First Amended Complaint on November 3, 2025[3] (the "Amended Complaint") captioned *Karr, et al., v. Sanberg, et al.*, Case No. 25STCV20376 ("Karr Action"), naming the following individuals and entities as defendants therein:  Sanberg; AGO Special Situations, LP; Steven Ballmer ("Ballmer"); Ballmer Giving LLC; Ibrahim Alhusseini; Nate Redmond; Alpha Edison Management Company, LLC; David Aronoff; Baker Hostetler LLP; KPMG LLP; Alvarez & Associates, Inc.; BDO USA, P.C.; Micahel Ellis; Inherent Group, LP; and Does 1 through 30 (collectively, the "Karr Defendants").

8.      The Amended Complaint in the Karr Action asserts claims against various of the Karr Defendants "for (1) Fraud, (2) Aiding and Abetting Fraud, (3) Violation of Penal Code § 496, and (4) Violation of California Corporate Securities Law," under the "First- Fifth Causes of Action" (referred to here as "Counts I-V" for ease of reference) as follows:

> Count I - Fraud – By all Plaintiffs against Joseph Sanberg and Does 1 through 30;
>
> Count II - Fraud – By Chicago Atlantic and Praesumo against Joseph Sanberg, Nate Redmond, Ibrahim Alhusseini and Does 1 through 30;
>
> Count III - Aiding and Abetting Fraud – By all Plaintiffs against Ballmer, Ballmer Group,[4] AGO Special Situations, LP, Ibrahim

---

[3] The Amended Complaint added, inter alia, Steven Ballmer, the owner of the Los Angeles Clippers and a multi-billion dollar former CEO of Microsoft, and Ballmer Giving LLC as defendants.
[4] The Amended Complaint names Steven Ballmer and Ballmer Giving LLC as defendants, yet the third, fourth and fifth causes of action assert a claim against the Ballmer Group, which is not a named defendant

AlHusseini, Nate Redmond, Alpha Edison Management Company, LLC, David Aranoff, Baker Hostetler LLP, KPMG, Alvarez & Associates, BDO, Michael Ellis, Inherent Group and Does 1 through 30;

Count IV - Violation of California Penal Code § 496 – By all Plaintiffs against Joseph Sanberg, Ballmer, Ballmer Group, AGO Special Situations, LP, Ibrahim AlHusseini, Nate Redmond, Alpha Edison Management Company, LLC, David Aranoff, Baker Hostetler LLP, KPMG, Alvarez & Associates, BDO, Michael Ellis, Inherent Group and Does 1 through 30; and

Count V - Violation of California Corporate Securities Law – By all Plaintiffs against Joseph Sanberg, Ballmer, Ballmer Group, AGO Special Situations, LP, Ibrahim AlHusseini, Nate Redmond, Alpha Edison Management Company, LLC, David Aranoff, Baker Hostetler LLP, KPMG, Alvarez & Associates, BDO, Michael Ellis, Inherent Group and Does 1 through 30.

9.    Notably, paragraphs 4-7 of the Amended Complaint in the Karr Action allege that Ballmer "infused over $50 million; into and endorsed Catona in order to funnel millions of dollars to LA Clippers star Kawhi Leonard ("Leonard") in excess of the NBA's salary cap.  Ballmer is the $150 billion net worth owner of the Clippers who is said to have a net worth of $150 billion and is a former CEO of Microsoft.

10.    The Defendants claim to have relied upon Ballmer's endorsement of Catona in making loans to and investments in Catona and Sanberg. In that case, other creditors of Catona and the other Debtors were induced to extend credit and other financial accommodations to the Debtors based upon Ballmer's celebrity endorsements.  The Defendants allege that but for "Ballmer's support, Catona could not have sustained the frauds" described in the Amended Complaint.

---

in the Amended Complaint. The Trustee presumes the Plaintiffs assert such causes of action against Steven Ballmer and his related entities.

**The D & O Policies**

11.     The Trustee is aware of the following insurance policies (together, the "D & O Policies") which may possibly provide coverage with respect to claims against officers and directors of the Debtors:

      a.     Policy issued by AXIS Insurance Company in the amount of $2.5 million;

      b.     Excess policy issued by Underwriters at Lloyd's of London (55%) and Republic Vanguard Insurance Company (45%) in the amount of $1.25 million (in excess of $2.5 million);

      c.     Excess policy issued by Hudson Excess Insurance Company in the amount of $1.25 million (in excess of $3.75 million);

      d.     Policy issued by RSUI Indemnity Company in the amount of $1 million;

      e.     Policy issued by Cap Specialty in the amount of $2 million;

      f.     Policy issued by Crum & Forster in the amount of $3 million.

12.     On information and belief, the policy limits for the D & O Policies are inclusive of defense costs, so that the expenditure of funds to defend suits against officers and directors of the Debtors has reduced and will continue to reduce the funds available to pay any settlement with, or judgment against, those parties.  The Trustee understands that these policies have been depleted to a point that only approximately $800,000 of coverage remains available, and that significant defense cost claims remain outstanding against that remaining amount.

13.     Based upon the risk of the further depletion of the existing insurance policies, the Trustee seeks injunctive relief to enjoin investors and creditors from racing to recover from the same pool of limited money—whether insurance proceeds or assets of potential defendants—that should instead be collected and distributed to all the creditors of the Debtors' estates.

14.     Accordingly, the Trustee seeks entry of a judgment in her favor: (1) declaring that the automatic stay enjoins the Karr Action Plaintiffs from taking any further action in the Karr Action to the extent that it asserts claims against property of the Debtors' estates; (2) entry of an order enjoining the Karr Action Plaintiffs under sections 105 and 362 of the Bankruptcy Code from taking any further action against what constitutes property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code; and (3) entry of an order enjoining any further litigation filed against the Debtors' directors, officers, professionals, or the other Karr Defendants by the Karr Action Plaintiffs for the same or similar causes of action, or causes of action based on different legal theories but arising from the same or similar operative facts.

15.     To the extent that the Karr Action asserts claims which belong to the Debtors' estates, under section 541 of the Bankruptcy Code, they violate the automatic stay pursuant to section 362(a) of the Bankruptcy Code.

16.     The Defendants should not be permitted to accomplish an end-run around an orderly and supervised process mandated by Congress through the Bankruptcy Code by racing to judgment in a non-bankruptcy forum, seeking to obtain recoveries unavailable to or competitive with legitimate creditors and gaining an advantage by having their case heard first. If the Defendants and other similarly situated parties are permitted to do so, they will directly and imminently threaten proceeds of the D & O Policies, and reduce the potential recovery for the estates from the D & O Policies and from other assets of the directors, officers, and third parties.

## JURISDICTION AND VENUE

17.     On the Petition Date, the Debtors each filed for voluntary relief under Chapter 11 of the Bankruptcy Code. On August 7, 2025, the Debtors' chapter 11 cases were converted to cases

under chapter 7 of the Bankruptcy Code. Thereafter, Jami B. Nimeroff was appointed as the Chapter 7 Trustee by the Office of the United States Trustee for the Debtors' bankruptcy estates.

18.     This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and the Amended Standing Order of Reference issued by the United States District Court for the District of Delaware on February 29, 2012.

19.     This is a "core" proceeding pursuant to 28 U.S.C. § 157(b) such that the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Bankruptcy Rule 7008 and Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the extent any cause of action is found to be non-core, the Trustee consents to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

20.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

21.     This is an adversary proceeding brought pursuant to Rule 7001 of the Bankruptcy Rules seeking Declaratory Judgment.

22.     There exists a substantial controversy between the Trustee and Defendants of sufficient immediacy and reality to warrant the requested relief.

### THE PARTIES

23.     Plaintiff is the duly appointed Chapter 7 Trustee for the Debtors' estates.

24.     The Debtors are Delaware corporations or LLCs. Prior to the Petition Date, the Debtors held themselves out as financial technology and sustainability companies that purported to trade in carbon emission credits and related enterprises.

25.     Defendant Donald R. Karr is an individual resident in Los Angeles, California.

26.     Defendant Miller Family Legacy LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

27.     Defendant Louis R. "Skip" Miller is an individual resident in Los Angeles, California, a noted trial lawyer and founder of Miller Barondess, LLP, is a party and also counsel for the Defendants in the Karr Action.

28.     Defendant ALS Revocable Trust is the Andrew L. Sandler Revocable Trust u/t/a dated September 14, 2012, as amended and restated.

29.     Defendant Emerging Impact Fund II, LP is a Delaware limited partnership with its principal place of business in San Francisco, California.

30.     Defendant Praesumo Holdings, LLC is a Delaware limited liability company with its principal place of business in Miami Beach, Florida.

31.     Defendant Ravi Sarin is an individual resident in Los Angeles, California.

32.     Defendant Paul Soro 2010 Family Trust A is a trust.

33.     Defendants Chicago Atlantic Finance LLC, Chicago Atlantic Credit Company LLC and Chicago Atlantic Opportunity Finance LLC are Delaware limited liability companies with their principal place of business in Chicago, Illinois.

34.     The Defendants are not creditors and have not filed any proofs of claim—based on their allegations in the Karr Action, they are at the most merely investors with equity interests (and as to the Chicago Atlantic entities, the allegations in the Karr Action fail to establish even that) who are attempting to leapfrog the priorities set forth in Part V of the Bankruptcy Code.

## FACTUAL BACKGROUND

### The Karr Action

35.     On July 9, 2025, the Defendants herein filed an initial Complaint commencing the Karr Action.  On November 3, 2025, the Defendants filed the Amended Complaint in the Karr Action.  A true and correct copy of the Amended Complaint against the Karr Defendants is attached hereto as **Exhibit C**.

36.     The Amended Complaint alleges claims of fraud, aiding and abetting fraud, violation of California Penal Code § 496 for civil theft and violation of California corporate securities law. **Exhibit C.**

37.     Paragraphs 37-129 of the Amended Complaint set forth certain "Factual Allegations" relied upon by the Defendants in the Karr Action, and are incorporated herein by reference.[5]  These allegations demonstrate the generalized nature of the claims asserted in the Karr Action and that those claims are properly property of the Debtors' chapter 7 estates.  Of note, the Amended Complaint alleges that:

- Catona was founded in 2015 and shifted its focus from "fintech" to selling sustainability products such as carbon credits.  It entered into a "SPAC" transaction in 2021, in order to be traded on the NYSE so that the principals could sell their equity stakes.  ¶¶ 37-39.

- Sanberg conspired with Ballmer, who "promotes himself as an environmental activist," and who sought to funnel millions of dollars to Leonard in excess of NBA salary limitations in order to keep Leonard under contract with the Clippers to realize Ballmer's long quest for an NBA championship.  "Ballmer viewed Leonard as critical to the team. [He's] 'not only [our] best player but one of the preeminent handful of players in the world.'"  Leonard's demands for excessive compensation are notorious in and around the NBA.  ¶¶ 41-46.

- "Ballmer and Sanberg launched a scheme to circumvent the NBA's salary cap" to funnel money to Leonard under a sham endorsement deal with Catona.  Ballmer's reputation as an environmentalist meshed with Catona's image as a green economy company, and

---

[5] Plaintiff incorporates these allegations solely to demonstrate the generalized nature of the claims asserted in the Karr Action for the purpose of this proceeding.

Ballmer funded a $48 million endorsement deal between Catona and Leonard at the same time that Leonard signed with the Clippers. Catona's executives recognized the sham nature of the deal and objected, but Sanberg overruled them. Leonard never endorsed Catona. "Ballmer knowingly purported to be an investor and supporter of Catona to create an air of legitimacy for Catona to solicit and retain investments. . . ." ¶¶ 47-64. The Amended Complaint goes on to provide further detail regarding these allegations. ¶¶ 65-72.

- Paragraphs 73-78 of the Amended Complaint discuss Sanberg's and AlHusseini's use of fraudulent financial statements to borrow millions from investors using Sanberg's stock in Catona as collateral, along with the phony put option contracts discussed above. Sanberg's creation of fake customers and phony letters of intent to falsely inflate Catona's revenues, as well as Sanberg's apparent "round-tripping" of cash to show payments for these "sales", is discussed in paragraphs 79-84.

- The Amended Complaint's paragraphs 85-99 and 114-129 describe Catona's issuance of phony financial statements to facilitate its SPAC transaction and to provide directly to investors, and other frauds aided by their accounting professional; and other Karr Defendants' aiding, abetting and concealing Sanberg's frauds.

- Finally, Baker Hostetler was hired to investigate and then concealed the frauds, paragraphs 100-113.

38. The fraud and related causes of action asserted by the Defendants in the Karr Action are general to all chapter 7 creditors and therefore constitute property of the Debtors' chapter 7 estates pursuant to section 541 of the Bankruptcy Code. Notwithstanding the specific allegations regarding the particular frauds perpetrated against the Defendants by Sanberg and the others, such fraud and aiding abetting claims are clearly general claims that constitute property in which the Debtors' estates assert both a legal and equitable interest.

39. The Karr Action Plaintiffs base their claims against the Karr Defendants on allegations that they variously falsified financials of the Debtors, aided Sanberg's and others' fraud on investors to induce the Defendants' investment in the Debtors, otherwise contributed to the fraudulent scheme run by Sanberg, AlHusseini and their co-conspirators and thus violated applicable provisions of the California Code. See **Exhibit C**. The Karr Action Plaintiffs' fraud-based claims are generalized to all chapter 7 creditors and are not particular to the Karr Action

Defendants. Thus, the Karr Action violates the automatic stay imposed by section 362(a) of the Bankruptcy Code.

40. The claims brought by the Karr Action Plaintiffs threaten the limited resources belonging to the Karr Defendants and the D & O Policies, which the Trustee intends to pursue for the benefit of all creditors. *Id.* ¶ 17.

41. Thus, permitting the Karr Action Plaintiffs to proceed in California with the Karr Action threatens recovery from the same limited pool of money that the Trustee may, following her investigation, decide to pursue, which is in the possession of the same defendants that the Trustee may intend to pursue, as a result of the same acts performed by the Karr Defendants. Further, to allow the Karr Action to continue at this time would threaten to defeat or impair this Court's jurisdiction over the Debtors' estates by hamstringing the ability of the Trustee's ability to adequately fulfill her duty to maximize recovery on behalf of all creditors.

42. Moreover, to allow the Karr Action Plaintiffs to proceed in California will cause immediately the erosion of the assets belonging to the Karr Defendants and the D & O Policies thereby, necessitating immediate injunctive relief. According to the Karr Action's publicly-available docket, multiple dispositive motions—including several demurrers to strike under California's anti-SLAPP statute—are presently scheduled for hearing on April 22, 2026. Absent the imposition of an immediate stay against Defendants (the plaintiffs in the Karr Action), that hearing will lead to the further erosion of assets the Trustee may eventually pursue and result in factual findings and legal rulings that would prejudice the Trustee by impairing her ability to prosecute claims which are property of the Debtors' estates.

43.     Accordingly, it is appropriate to enjoin the Defendants, who are plaintiffs in the Karr Action, pursuant to section 105(a) of the Bankruptcy Code through entry of an order substantially in the form attached hereto as **Exhibit D**.

### The Trustee's Investigation

44.     The Trustee is presently investigating claims and pending the outcome of her investigation and evaluation of potential causes of action, may decide to pursue related actions against Sanberg, other officers and directors, and third parties, including certain of the Debtors' professionals.

45.     To date, the Trustee has not had the opportunity to fully investigate potential claims against these potential defendants; nevertheless, it appears from the Indictment that Sanberg knowingly, deliberately, and repeatedly falsified financial statements and audit documents over a multi-year period; siloed the organization of the Debtors in such a way as to minimize cross-functional visibility and accountability; ensured the Debtors suffered from a profound and persistent breakdown of corporate governance at the Board level such that the Board failed in nearly every respect to discharge its fiduciary duties; and siphoned corporate funds directly to companies owned by Sanberg and to satisfy his personal obligations. Further, it appears that other officers and directors of the Debtors may be liable for breach of fiduciary duty and other causes of action.

46.     Because of the monetary damage caused by the actions of directors and officers, which exceeds the coverage available under the D & O Policies, the remaining funds under the D & O Policies should be protected from further erosion to maintain the status quo and  ensure a fair and equitable distribution to creditors.

47. The furtherance of the Karr Action will directly and imminently threatens the estates' ability to recover on the D & O Policies, because any waste of the D & O Policies' proceeds in defense of litigation or in funding a judgment against or settlement with directors and officers will directly and negatively impact the recovery of the estates with respect to such policies.

48. Further, if successful, any direct recovery of assets by the Karr Action Plaintiffs from the directors and officers or third parties would in turn reduce the pool of assets available to the Trustee and the estates.

49. The Karr Action could also have a preclusive effect on the Trustee's prosecution of claims held by the estates, should the Karr Action proceed, especially because the underlying facts of the complaints are in all likelihood the same facts which would underlie any action brought by the Trustee.

50. The same risk of depletion of assets and preclusive effect exists for any future actions filed against Sanberg, other directors and officers, and third parties pursuing the same or similar theories of recovery relying on the same or related facts.

51. Moreover, on February 6, 2026, counsel for the Trustee sent written notice to Defendants advising that the claims asserted in the Karr Action constitute property of the Debtors' estates under section 541 of the Bankruptcy Code and that continued prosecution of the Karr Action violates the automatic stay imposed by 11 U.S.C. § 362(a). A true and correct copy of that letter is attached as **Exhibit E**. to Declaration of Dale E. Barney (the "Barney Decl.")

52. Upon information and belief Defendants counsel received that notice.

53. After receipt of the February 6, 2026 letter, Defendant's counsel (who is also a Plaintiff) did not dismiss or stay the Karr Action. Instead, Defendants through their counsel chase

to continue to prosecute the Karr Action, including by opposing motions and proceeding toward dispositive hearings scheduled for April 22, 2026.

54. Defendants continue to prosecute the Karr Action in willful violation of the automatic stay imposed by section 362 of the Bankruptcy Code despite the fact that the Trustee through her counsel advised the Defendant's counsel that these causes of action are property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code. See **Exhibit E**.

55. Continued prosecution of the Karr Action has resulted and will continue to result in: depletion of proceeds of the D&O Policies through defense costs; potential adjudication of issues of fact and law overlapping with claims belonging to the estates; and diminution of assets and insurance proceeds that the Trustee may seek to recover for the benefit of all creditors.

## COUNT I

### DECLARING THE AUTOMATIC STAY OF SECTION 362(A) ENJOINS THE KARR ACTION AND ANY OTHER LITIGATION THAT SEEKS RECOVERIES THAT ARE PROPERTY OF THE ESTATES

**(Declaratory Relief)**

56. Plaintiff realleges and incorporates all proceeding paragraphs 1-50 as if fully set forth at length herein.

57. Section 362(a) of the Bankruptcy Code prohibits the commencement or continuation of any actions against a debtor that were or could have been commenced before the bankruptcy filing, or which seek to recover for any claim that arose prior to the commencement of the bankruptcy case, or which seek to obtain possession of or exercise control over property of the estate or from the estate, except in those cases specifically enumerated in section 362(b).

58. None of the exceptions enumerated in section 362(b) of the Bankruptcy Code apply to the Karr Action.

59.     The fraud and other claims asserted in the Karr Action are generalized to all Chapter 7 creditors and are therefore property of the estates pursuant to section 541 of the Bankruptcy Code.

60.     The fraud and other claims asserted in the Karr Action existed before the Petition Date.

61.     The fraud and other claims asserted in the Karr Action are causes of action that constitute property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code.

62.     Defendants continue to prosecute the Karr Action despite their counsel having received actual notice that the claims asserted in the Karr Action constitute property of the Debtors' estates and that continued prosecution of the Karr Action violates the automatic stay imposed by 11 U.S.C. § 362(a).

63.     Continued prosecution of the Karr Action will likely have a preclusive effect on the Trustee's ability to pursue certain claims against Sanberg and the other Karr Defendants and therefore may negatively impact recovery for the benefit of creditors of the chapter 7 estates.

64.     Allowing the Karr Action Plaintiffs to continue to pursue claims that are clearly property of the estates and/or adversely affect property of the estates, especially where Defendants are not creditors and have not filed proofs of claim, would eviscerate the priorities set forth in Part V of Bankruptcy Code and permit recoveries unavailable to or competitive with legitimate creditors.

65.     For these reasons, the Karr Action Plaintiffs are barred by the automatic stay and they must be enjoined pursuant to sections 105 and 362(a) of the Bankruptcy Code. Any future actions pursuing similar claims of relief against officers or directors or other entities liable under similar theories should also be enjoined pursuant to sections 105 and 362(a) of the Bankruptcy Code.

66.     There exists a substantial controversy between the Trustee and the Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. § 2201. A prompt judicial determination of the respective rights and duties of the parties in these respects is necessary and appropriate.

## COUNT II

**THE CONTINUED PROSECUTION OF THE KARR ACTION AND ANY OTHER LITIGATION ARISING FROM THE SAME FACTS PURSUANT TO SECTION 105(A), OR, ALTERNATIVELY, RULE 7065 OF THE BANKRUPTCY RULES, VIOLATES SECTION 362(A) OF THE BANKRUPTCY CODE**

**(Injunctive Relief)**

67.     Plaintiff realleges and incorporates all proceeding paragraphs 1-60 as if fully set forth at length herein.

68.     The Court has the power to stay the Karr Action Plaintiffs  from prosecuting all claims arising from the same or similar facts under section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The authority granted by section 105(a) includes the power to issue injunctions staying litigation in other courts.

69.     Section 105 Injunctions are governed by the well-known four (4) factor inquiry governing the entry of an injunction under Rule 65 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7065 of the Bankruptcy Rules:

      a.     the likelihood of the plaintiff's success on the merits;

      b.     whether plaintiff will suffer irreparable injury without the injunction;

      c.     the harm to others which will occur if the injunction is granted; and

      d.     whether the injunction will serve the public interest.

70.    In the bankruptcy setting, these considerations should be balanced rather than viewed as prerequisites that require satisfaction.

71.    The facts of this case overwhelmingly support the issuance of a preliminary injunction. First, the Trustee is likely to succeed on the merits. It is apparent from the face of the Amended Complaint that Defendants are pursuing certain claims that are generalized to all Chapter 7 creditors and, therefore, are property of the estates. Section 362(a) prohibits Defendants from pursuing these claims. Further, any claims asserted in the Amended Complaint or similar actions which are not property of the estates arise from the same or related facts and, if allowed to proceed, threaten the Trustee's ability to recover from the same parties based on the same or related facts.

72.    Second, the Trustee and the Debtors will be irreparably harmed if Defendants are permitted to continue to pursue the Karr Action or if other parties are permitted to pursue similar litigation. Among other reasons, the Karr Action may cause the dissipation of the proceeds of the D & O Policies, which are assets of the estates, and the dissipation of assets of the defendants in those actions. The Karr Action bases its claims upon Sanberg's material misrepresentations of the Debtors' financial condition to facilitate his fraudulent scheme at the Debtors and the other acts of malfeasance detailed in the Amended Complaint, which is the same factual pattern underlying claims which may be brought by the Trustee against Sanberg and any other culpable party. Adjudication of those claims in the Karr Action may have a preclusive effect on the Trustee's ability to pursue these claims, irreparably harming the Trustee's ability to recover funds for the benefit of all Chapter 7 creditors.

73.    Third, enjoining the Karr Action and similar litigation would not harm Defendants nor other stakeholders in this Chapter 7 proceeding. To the contrary, Defendants would be treated in an identical fashion to other similarly situated parties.

18

74.     Fourth, an injunction would further the public interest because, at this point in time, it is critical to preserve all remaining assets of the estates and the Trustee's ability to recover from the Karr Defendants for the benefit of all Chapter 7 creditors, and not those who won the race to the courthouse.

75.     Further, the Court has the power to enjoin proceedings in other courts if such proceedings would defeat or impair its jurisdiction over a case before it. Here, continued litigation of the Karr Action or similar litigation threatens the Trustee's ability to adequately fulfill her duty to maximize recovery on behalf of all creditors.

76.     Accordingly, to the extent that the Defendants here are not enjoined from the prosecution of the Karr Action and similar litigation by operation of the automatic stay, the Trustee respectfully requests that this Court enter an injunction enjoining the Karr Action Plaintiffs from pursuing of the Bankruptcy Code those actions and any other actions which may be brought by other parties against the directors, officers, professionals or related third parties of the Debtors based on the same or similar facts pursuant to section 105(a).

## REQUESTED RELIEF

**WHEREFORE**, the Trustee respectfully requests the entry of Judgment and an Order granting the following relief:

a. Declaring that the continued prosecution of the Karr Action pursuing claims of aiding and abetting by the directors or officers of the Debtors or other persons and entities connected to the Debtors violates the provisions of section 362(a) of the Bankruptcy Code and are hereby stayed pending further Order of the Court;

b. Entry of an Order enjoining the Defendants' continued prosecution of the Karr Action and from pursuing the same or similar theories of recovery against directors, officers,

19

professionals of the Debtors or related third parties based on facts related to those asserted in the Karr Action pursuant to sections 105(a) and 362(a) of the Bankruptcy Code;

c. Entry of an Order enjoining the continued prosecution of the Karr Action by the Defendants and any other litigation pursuing the same or similar theories of recovery against directors, officers or professionals of the Debtors and related third parties based on facts related to those asserted in the Karr Action pursuant to Bankruptcy Rule 7065; and

d. any such other and further legal and equitable relief as this Court deems just and proper.

Respectfully Submitted,

Dated: April 10, 2026

**CONNELL FOLEY LLP**

*/s/ Katharina Earle*
Katharina Earle (6348)
1000 North West Street
Wilmington, DE 19801
Telephone:   (302) 679-4297
Email:          kearle@connellfoley.com

and

Robert K. Malone (admitted *pro hac vice*)
Brett S. Theisen (admitted *pro hac vice*)
Dale E. Barney (*pro hac vice* forthcoming)
Mark Marsella (*pro hac vice* forthcoming)
56 Livingston Avenue
Roseland, NJ 07068
Telephone:  (973) 535-0500
E-mail:        rmalone@connellfoley.com
                   btheisen@connellfoley.com
                   dbarney@connellfoley.com
                   mmarsella@connellfoley.com

*Litigation Counsel for Jami B. Nimeroff as*
*Chapter 7 Trustee for CTN Holdings, Inc., et al.*

20

**VERIFICATION**

I, Jami B. Nimeroff, as Chapter 7 Trustee of the bankruptcy estates of CTN Holdings, Inc., *et al*., hereby declare under penalty of perjury under the laws of the United States that I have reviewed the Verified Complaint and the Indictment, First Superseding Information, and Amended Complaint in the Karr Action which are attached hereto and incorporated as set forth above; and that the exhibits are true copies of those pleadings based upon our review of the pertinent case dockets. Those pleadings are incorporated herein.

Dated this 10th day of April, 2026

/s/ *Jami B. Nimeroff*
Jami B. Nimeroff