**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CTN HOLDINGS, Inc., *et al*.,<br><br>           Debtors.[1]<br><br>_____<br><br>JAMI B. NIMEROFF, as chapter 7 trustee<br>for CTN Holdings, Inc., *et al*.,<br><br>           Plaintiff,<br><br>   v.<br><br>DONALD R. KARR; MILLER FAMILY<br>LEGACY LLC; LOUIS R. MILLER; ALS<br>REVOCABLE TRUST; EMERGING IMPACT<br>FUND II, LP; PRAESUMO HOLDINGS, LLC;<br>RAVI SARIN; PAUL SOROS 2010 FAMILY<br>TRUST A; CHICAGO ATLANTIC FINANCE<br>LLC; CHICAGO ATLANTIC CREDIT<br>COMPANY, LLC; and CHICAGO ATLANTIC<br>OPPORTUNITY FINANCE LLC,<br><br>           Defendants. | Chapter 7<br><br>Case No. 25-10603 (TMH)<br><br><br><br><br><br><br><br>Adv. Pro. No.: |

**MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION FOR
ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
PURSUANT TO SECTIONS 105(A) AND 362(A) OF THE BANKRUPTCY CODE AND
RULE 7065 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of the Debtors' federal tax identification number, are: CTN Holdings, Inc. (9122), CTN SPV Holdings, LLC (8689), Make Earth Green Again, LLC (4441), Aspiration QFZ, LLC (1532), Aspiration Fund Adviser, LLC (4214). Catona Climate Solutions, LLC (3375), and Zero Carbon Holdings, LLC (1679). The mailing address for the Debtors is 548 Market Street, PMB 72015, San Francisco, CA 94104-5401.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................2

RELEVANT PROCEDURAL AND FACTUAL HISTORY ......................................................4

ARGUMENT ...........................................................................................................5

    I.     This Court Has Jurisdiction to Grant the Requested Relief................................5

    II.    The Automatic Stay Should Be Enforced to Prevent Continued
          Prosecution of the Karr Action.................................................................7

    III.   The Standard for Injunctive Relief under Section 105(a) of the
          Bankruptcy Code is Satisfied ................................................................14

    IV.   In the Alternative, the Court Should Issue a Preliminary Injunction under
          Bankruptcy Rule 7065............................................................................19

    V.    A Temporary Restraining Order is Necessary to Preserve the Status Quo.......20

CONCLUSION.......................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Film Techs., Inc. v. Taritero*,
175 B.R. 847 (Bankr. D. Del. 1994) ..................................................................17, 20

*Am. Imaging Servs., Inc. v. Eagle-Picher Indus, Inc.*,
963 F.2d 855 (6th Cir. 1992) ..................................................................................14

*Am. Tel. & Tel. Co. v. Winback & Conserver Program, Inc.*,
42 F.3d 1421 (3d Cir. 1994)....................................................................................19

*CH Holding Co. v. Miller Parking Co.*,
534 B.R. 308 (E.D. Mich. 2015)...............................................................................9

*Fisher v. Apostolou*,
155 F.3d 876 (7th Cir. 1998) .............................................................................14, 17

*Greenpond S., LLC v. Gen. Elec. Capital Corp.*,
886 N.W.2d 649 (Minn. App. 2016)..........................................................................9

*In re Emoral, Inc.*,
740 F.3d 875 (3d Cir. 2014)........................................................................8, 10, 11

*In re Revel AC, Inc.*,
532 B.R. 216 (Bankr. D.N.J. 2015) ...........................................................................6

*In re Kaplan*,
104 F.3d 589 (3d Cir. 1997)......................................................................................5

*In re L & S Indus., Inc.*,
989 F.2d 929 (7th Cir. 1993).....................................................................................14

*In re PA Co-Man, Inc.*,
644 B.R. 553 (Bankr. W.D. Pa. 2022) ................................................................8, 10

*In re RNI Wind Down Corp.*,
348 B.R. 286 (Bankr. D. Del. 2006) ..........................................................................5

*In re SemCrude L.P.*,
796 F.3d 310 (3d Cir. 2015)................................................................................9, 12

*In re W.R. Grace & Co.*,
386 B.R. 17 (Bankr. D. Del. 2008) .....................................................................17, 19

*In re Whittaker Clark & Daniels Inc.*,
152 F.4th 432 (3d Cir. 2025) ...........................................................................8, 9, 11

ii

*In re Wilton Armetale, Inc.*,
   968 F.3d 273 (3d Cir. 2020)..................................................................8, 10, 11

*JAWHBS, LLC v. Arevalo*,
   No. 15-24176-CIV-GAYLES, 2016 U.S. Dist. LEXIS 102603 (S.D. Fla. Aug.
   4, 2016) ..................................................................................................9

*Koons v. Reynolds*,
   649 F. Supp. 3d 14 (D.N.J. 2023) .............................................................20

*Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC*,
   142 F.3d 631 (3d Cir. 1998)......................................................................7

*Lifescan, Inc. v. Smith*,
   No. 17-5552, 19-8761 (CCC) (JSA), 2025 U.S. Dist. LEXIS 113751 (D.N.J.
   Mar. 4, 2025), *supplemented*, 2025 U.S. Dist. LEXIS 112395 (D.N.J. Mar. 12,
   2025) ......................................................................................................9

*Maritime Elec. Inc. v. United Jersey Bank*,
   959 F.2d 1194 (3d Cir. 1991).....................................................................7

*Matter of Lemco Gypsum, Inc.*,
   910 F.2d 784 (11th Cir. 1990)....................................................................6

*Penn Terra Ltd. v. Dep't of Env't Res.*,
   733 F.2d 267 (3d Cir. 1984)......................................................................14

*Punnett v. Carter*,
   621 F.2d 578 (3d Cir. 1980).......................................................................16

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017)...........................................................15, 16, 20

*Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*,
   138 F. App'x 431 (3d Cir. 2005) ..............................................................16

*Ritchie Spec. Credit Investments, Ltd. v. JPMorgan Chase & Co.*,
   48 F.4th 896 (8th Cir. 2022) ......................................................................9

*Shubert v. Premier Paper Prods., LLC (In re Am. Tissue, Inc.)*,
   No. 01-10370, 2006 Bankr. LEXIS 3266 (Bankr. D. Del. Dec. 4, 2006)...............19

*SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*,
   388 B.R. 579 (Bankr. D. Del. 2008) ...........................................................13

*United States v. Whiting Pools*,
   462 U.S. 198 (1983)..................................................................................7

*Zerand-Bernal Group v. Cox*,
   23 F.3d 159 (7th Cir. 1994)............................................................................14

**Statutes**

11 U.S.C. §§ 101-1532 .........................................................................................2

11 U.S.C. § 362(a)(3) ...........................................................................................7

11 U.S.C. § 541(a)(1) ...........................................................................................7

28 U.S.C. § 157(a) ................................................................................................5

28 U.S.C. § 157(b)(2) ...........................................................................................5

28 U.S.C. § 157(c)(1) ...........................................................................................5

28 U.S.C. § 1334(a) and (e)(1) .............................................................................5

28 U.S.C. § 1334(b).............................................................................................5

**Rules**

Federal Rules of Civil Procedure Rule 65 .........................................................14

Federal Rules of Bankruptcy Procedure Rule 7065................................... *passim*

**Other Authorities**

Bankruptcy Code Part V .......................................................................................2

Bankruptcy Code Section 105(a) ................................................................ *passim*

Bankruptcy Code section 362 ..................................................................... *passim*

Bankruptcy Code section 362(a)................................................................. *passim*

Bankruptcy Code section 541 ...................................................................2, 13, 15

California Penal Code § 496 ..................................................................... 6, 10, 15

Jami B. Nimeroff, the Plaintiff in this adversary proceeding (the "Adversary Proceeding") and the duly appointed Chapter 7 Trustee (the "Plaintiff" or the "Trustee") for the estates of CTN Holdings, Inc., CTN SPV Holdings, LLC, Make Earth Green Again, LLC, Aspiration QFZ, LLC, Aspiration Fund Adviser, LLC, Catona Climate Solutions, LLC,  Zero Carbon Holdings, LLC and Carbon Sequestration III, LLC (hereinafter, collectively "CTN" or the "Debtors") in the above-captioned bankruptcy case, respectfully submits this Memorandum of Law in support of her *Motion for Entry of a Temporary Restraining Order and Preliminary Injunction pursuant to sections 105(a) and 362(a) of chapter 11 of title 11 of the United States Code and Rule and 7065 of the Federal Rules of Bankruptcy Procedure* (the "Motion") for the issuance and entry of an order enforcing the automatic stay pursuant to section 362(a) of the Bankruptcy Code and enjoining Defendants Donald R. Karr; Miller Family Legacy LLC; Louis R. Miller; ALS Revocable Trust; Emerging Impact Fund II, LP; Praesumo Holdings, LLC; Ravi Sarin; Paul Soros 2010 Family Trust A; Chicago Atlantic Finance LLC; Chicago Atlantic Credit Company, LLC; and Chicago Atlantic Opportunity Finance LLC (collectively, the "Defendants or "Karr Action Plaintiffs") from continuing the prosecution of the action commenced on July 9, 2025 in the Superior Court of the State of California, County of Los Angeles, Central District, captioned *Karr, et al., v. Sanberg, et al.*, Case No. 25STCV20376 as amended on November 3, 2025 (the "Karr Action") as well as any further litigation pursuing the same or similar theories of recovery.[2]

---

[2] The Trustee commenced this Adversary Proceeding by filing the *Chapter 7 Trustee's Verified Complaint for Declaratory Relief under Section 362(a) of the Bankruptcy Code, Injunctive Relief under Sections 105(a) and 362(a) of the Bankruptcy Code and a Preliminary Injunction under Rule 7065 of the Federal Rules of Bankruptcy Procedure* ("Verified Complaint").

**PRELIMINARY STATEMENT**

The Chapter 7 Trustee is compelled to seek immediate declaratory and injunctive relief to halt the Defendants' unlawful efforts to prosecute claims that are property of the bankruptcy estates and to improperly elevate their recoveries within the priority scheme set forth in Part V of the Bankruptcy Code, in blatant violation of the automatic stay imposed by section 362 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Notwithstanding the fact that the Trustee through her counsel advised Defendants' counsel that these causes of action constitute property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code, The Karr Action Plaintiffs continue to prosecute a state court action against certain of the Debtors' former officers and directors, professionals, and investors. Defendants herein assert causes of action that the estate hold legal and equitable interests in clear violation of the automatic stay imposed by section 362 of the Bankruptcy Code, that threaten the same limited pool of assets that the Trustee is charged with marshaling in accordance with the Bankruptcy Code's priority framework for the benefit of the chapter 7 estates.

Defendants are not creditors and have not filed any proofs of claim by the Bar Dates established in these cases. They are, at most, investors holding equity interests. Defendants should not be permitted to execute an end-run around the orderly and centralized process mandated by Congress through the Bankruptcy Code by racing to judgment in a non-bankruptcy forum, seeking to obtain recoveries that are otherwise unavailable to them under the Bankruptcy Code ahead of legitimate creditors, and gaining a litigation advantage simply by prosecuting their claims first. Given an impending hearing in the Karr Action on April 22, 2026 that could very likely result in factual findings and legal rulings that could possibly prejudice the Trustee by impairing her ability

to prosecute claims belonging to the estates, cause exists for the Court to enter a temporary restraining order enjoining Defendants from prosecuting the Karr Action at least until the Court can rule on the preliminary injunction.[3]

Defendants' conduct presents imminent and irreparable harm to the estates because the claims asserted in the Karr Action are generalized claims that belong to the estates and arise from the same theories of liability and operative facts that the Trustee may pursue on behalf of all chapter 7 creditors. Accordingly, the Trustee has commenced this Adversary Proceeding by filing a Verified Complaint seeking declaratory relief under section 362(a) of the Bankruptcy Code, injunctive relief under sections 105(a) and 362(a) of the Bankruptcy Code, a temporary restraining order, and a preliminary injunction barring Defendants from further prosecuting the Karr Action.

Although the Karr Action asserts multiple causes of action under California law, the gravamen of the operative Amended Complaint in that matter is uniform: Defendants allege that the Debtors' former officers and directors, investors, professionals, and advisors misrepresented and concealed the Debtors' true financial condition and operations, thereby inducing investments and extensions of credit. The alleged misconduct occurred pre-petition and describes harm that is common to all investors and creditors of the Debtors, as discussed in paragraph 37 of the Verified Complaint. As such, the causes of action asserted in the Karr Action either constitute claims that are property of the Debtors' bankruptcy estates or seek recoveries from parties and assets that the Trustee is actively investigating that could very likely result in the pursuit of claims for the collective benefit of all chapter 7 creditors.

---

[3] The Chapter 7 Trustee's undersigned counsel has communicated with counsel for the following defendants in the Karr Action who/which have filed demurrers/motions to strike the compliant there:  Nate Redmond; Alpha Edison Management Company, Inc.; David Aronoff; Baker Hostetler LLP; KPMG LLP; Steven Ballmer and related entities; and BDO USA P.C. These defendants' counsel have indicated that they have no objection to the relief sought by way of this application.  Provided however, that the defendants listed in this footnote and the Trustee expressly reserve any and all rights, remedies, defenses, and arguments.

The Trustee has been duly appointed and vested with exclusive authority to liquidate all assets of the estates, including, *inter alia*, claims and causes of action, and to distribute recoveries in accordance with the priority scheme established by the Bankruptcy Code. The Trustee is actively in the process of investigating the conduct of the Debtors' former officers and directors, as well as the actions of the Debtors' investors, professionals, auditors, and other fiduciaries and related third parties, to ensure that all viable avenues of recovery are properly evaluated and thereafter pursued. Defendants' continued prosecution of the Karr Action threatens to impair the Trustee's ability to maximize estate value to the extent the Trustee later on decides to assert claims belonging to the estates or competes for recoveries against the same defendants based on the same or substantially similar facts.

In addition, Defendants' pursuit of the Karr Action threatens finite and valuable estate assets, including proceeds of directors' and officers' liability insurance and other limited sources of recovery. Any judgment, settlement, or defense-cost erosion arising from the Karr Action will necessarily diminish potential recoveries available to the estates and prejudice chapter 7 creditors as a whole, thereby frustrating the core purposes of the Bankruptcy Code and undermining this Court's exclusive jurisdiction over estate property.

For these reasons, and as set forth in the Verified Complaint, Defendants' continued and willful violation of the automatic stay imposed by section 362 of the Bankruptcy Code is imperiling property of the Debtors' estates. Defendants' conduct further threatens to impair the Trustee's ability to perform her statutory duties. Irreparable harm will result if a stay of the Karr Action is not enforced. The Trustee therefore respectfully requests that the Court enter a temporary restraining order enjoining Defendants from continuing the prosecution of the Karr Action until after the Court

has determined whether it will grant the Trustee's request for a preliminary injunction for the same relief, and granting such other and further relief as is just and proper.

## RELEVANT PROCEDURAL AND FACTUAL HISTORY

On March 30, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On May 22, 2025, Carbon Sequestration III, LLC also filed a chapter 11 petition (hereinafter, collectively "CTN" or the "Debtors"). On August 7, 2025 the Bankruptcy Court converted the cases to cases under chapter 7. Thereafter, the United States Trustee appointed Jami B. Nimeroff as the chapter 7 trustee for the Debtors' bankruptcy estates.

The factual background supporting the relief requested in the Motion and this Memorandum, as well as certain capitalized terms used therein, can be found in the Verified Complaint and are incorporated herein in their entirety by reference.

## ARGUMENT

### I.      This Court Has Jurisdiction to Grant the Requested Relief.

This Court has exclusive jurisdiction over the Debtors' chapter 7 bankruptcy proceedings and over all property of the Debtors' bankruptcy estates. *See* 28 U.S.C. § 1334(a) and (e)(1); 28 U.S.C. § 157(a) see generally, *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446 (3d Cir. 1982). Enforcement of the automatic stay arising in chapter 7 proceedings pursuant to section 362(a) of the Bankruptcy Code falls squarely within this Court's subject-matter jurisdiction. *See* 28 U.S.C. §§ 1334(b) and 157(b)(2).

The issues raised in the Verified Complaint are "core" matters because they require a determination that the claims asserted by Defendants in the Karr Action are property of the estates and therefore may be asserted only by the Trustee. *In re RNI Wind Down Corp.*, 348 B.R. 286, 292-93 (Bankr. D. Del. 2006). In addition to matters "arising in" the chapter 7 proceedings, this Court may exercise subject-matter jurisdiction over any civil proceeding "related to" the chapter 7

5

proceedings. 28 U.S.C. §§ 1334(b) and 157(c)(1). This jurisdiction authorizes the Bankruptcy Court to enjoin third-party actions that are "related to" the bankruptcy cases. *See In re Kaplan*, 104 F.3d 589, 594 (3d Cir. 1997).

A civil action is "related to" a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* The policy animating this rule is to "avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." *In re Revel AC, Inc.*, 532 B.R. 216, 223 (Bankr. D.N.J. 2015) (quoting *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir. 1990)).

The causes of action in the Karr Action are plainly related to the chapter 7 proceedings because it will affect property of the estates and directly impact the administration and distribution of estate assets. A true and correct copy of the operative pleading in the Karr Action, the First Amended Complaint ("Amended Complaint"), is attached to the Verified Complaint as **Exhibit C**. In the Karr Action, Defendants assert claims for fraud, aiding and abetting fraud, a violation of California Penal Code § 496 (civil theft), and violations of California securities laws against the Debtors' former officers and directors, investors, professionals, and advisors, including allegations that such parties misrepresented and concealed the Debtors' financial condition and operations prior to the Petition Date and conducted a fraudulent scheme that stole almost $250 million from investors and lenders.

The Trustee has exclusive authority to investigate, prosecute, and settle claims belonging to the estates, including claims based on these same alleged acts, omissions, and theories of liability. The Trustee after completion of her investigation may decide to pursue claims against the Debtors' former officers and directors, investors, professionals, and fiduciaries based on allegations that they

6

participated in, enabled, or failed to prevent misconduct that directly injured the Debtors and, derivatively, their creditors. Defendants' prosecution of the Karr Action threatens to usurp the Trustee's authority, interfere with the centralized administration of the estates, and impair the Trustee's ability to prosecute estate claims for the benefit of all creditors.

Further, the Karr Action may have a preclusive or estoppel effect on the Trustee's ability to prosecute estate causes of action based on the same or substantially similar facts or may lead to inconsistent results if allowed to proceed concurrently. In addition, the Karr Action directly and imminently threatens finite estate property, including potential recoveries from Defendants and related insurance proceeds, thereby diminishing assets otherwise available for equitable distribution to all chapter 7 creditors. For these reasons, the Karr Action falls squarely within this Court's "related to" jurisdiction and thus the Defendants herein should and must be enjoined to protect the estates and this Court's exclusive jurisdiction over the estates' property. For the reasons below, the further prosecution of the Karr Action also imminently threatens the estates and their claims.

## II. The Automatic Stay Should Be Enforced to Prevent Continued Prosecution of the Karr Action.

### A. Defendants Assert Claims that Belong to the Estates.

Section 362(a) of the Bankruptcy Code provides that the commencement of a bankruptcy case operates as an automatic stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay is one of the central protections afforded by the Bankruptcy Code, staying automatically all judicial actions that were or could have been brought before a bankruptcy case. *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac)*, 142 F.3d 631, 637 (3d Cir. 1998) (citations omitted); *Maritime Elec. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1203-04 (3d Cir. 1991).

The filing of a bankruptcy case creates an "estate" that comprises all the debtor's legal and equitable interests in property, including claims and causes of action. 11 U.S.C. § 541(a)(1) ("The commencement of a case under . . . this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: . . . all legal and equitable interests of the debtor in property as of the commencement of the case."); see generally United States v. Whiting Pools, 462 U.S. 198 (1983). "After a company files for bankruptcy, 'creditors lack standing to assert claims that are 'property of the estate.'" *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (citation omitted). Instead, "once a cause of action becomes the estate's property, the Bankruptcy Code gives the trustee, and only the trustee, the statutory authority to pursue it." *In re Whittaker Clark & Daniels Inc.*, 152 F.4th 432, 448 (3d Cir. 2025); *see also In re Wilton Armetale, Inc.*, 968 F.3d 273, 282 (3d Cir. 2020) ("If [claims are property of the estate], then only the bankruptcy trustee has the statutory authority to bring them unless abandoned.")

A cause of action is property of the estate if it (1) "existed at the outset of the bankruptcy", and (2) is "a 'general' claim, meaning one 'with no particularized injury arising from it.'" *Whittaker*, 152 F.4th at 448 (citations omitted). "Whether a claim is 'general' to all creditors or 'personal' to a specific creditor calls for an examination of the nature of the cause of action itself." *Id.* (citations omitted). In making this examination, the court focuses "not on the nature of the injury, but on the 'theory of liability.'" *Id.* (citations omitted). Even if another party has constitutional standing to pursue a claim, if the same claim is also property of the estate, the Bankruptcy Code denies the non-debtor party the authority to bring such claim. *Wilton Armetale, Inc.*, 968 F.3d at 280-83.

General claims are ones "based on facts generally available to any creditor, and [for which] recovery would serve to increase the pool of assets available to all creditors." *Id*. at 283. "A claim

8

is 'general' if the creditor's theory of liability depends on facts concerning the relationship between the defendant and another party—that is, 'facts generally available to any creditor.'" *Whittaker*, 152 F.4th at 448 (quoting *Emoral*, 740 F.3d at 881). A claim is general and constitutes estate property when it "alleges only indirect harm to the creditor (i.e., one that derives from harm to the debtor), and the debtor could have raised a claim against the defendant for its direct injury under applicable law." *In re PA Co-Man, Inc.*, 644 B.R. 553, 599 (Bankr. W.D. Pa. 2022). By contrast, personal claims are "specific to the creditor" and in which "other creditors generally have no interest." *Whittaker*, 152 F.4th at 448. "A claim is 'personal' when the creditor's injury can be 'directly traced' to wrongful conduct committed by the defendant, whether that be the debtor or a third party." *Id*. (citations omitted).

Courts have applied these principles to find that causes of action including aiding and abetting fraud, civil conspiracy, aiding and abetting civil conspiracy, and civil theft/conversion are property of the bankruptcy estate. *See, e.g.*, *Ritchie Spec. Credit Investments, Ltd. v. JPMorgan Chase & Co.*, 48 F.4th 896 (8th Cir. 2022) (aiding and abetting fraud was a general claim that was property of the estate); *In re SemCrude L.P.*, 796 F.3d 310, 318 (3d Cir. 2015) (equity holder claims related to the diminution in value of their investments were property of the estate); *Lifescan, Inc. v. Smith*, No. 17-5552, 19-8761 (CCC) (JSA), 2025 U.S. Dist. LEXIS 113751 (D.N.J. Mar. 4, 2025), *supplemented*, 2025 U.S. Dist. LEXIS 112395 (D.N.J. Mar. 12, 2025) (same); *JAWHBS, LLC v. Arevalo*, No. 15-24176-CIV-GAYLES, 2016 U.S. Dist. LEXIS 102603 (S.D. Fla. Aug. 4, 2016) (civil conspiracy and civil aiding and abetting claims were property of the estate); *CH Holding Co. v. Miller Parking Co.*, 534 B.R. 308, 318 (E.D. Mich. 2015) (conversion and conspiracy claims); *Greenpond S., LLC v. Gen. Elec. Capital Corp.*, 886 N.W.2d 649, 658 (Minn.

9

App. 2016) (civil conspiracy to commit fraud and aiding and abetting fraud are general claims that belong to the estate).

Both *Greenpond* and *SemCrude* are particularly instructive here. In *Greenpond*, the court held that claims alleging a lender aided and abetted a debtor's fraud were general claims belonging to the bankruptcy estate because the plaintiff's injury was not distinct from that suffered by other creditors, all of whom lost funds due to the debtor's fraudulent conduct. 886 N.W.2d at 651, 656. Similarly, in *SemCrude*, the Third Circuit ruled that investors' claims for fraud and breach of fiduciary duty against the debtor's CEO were derivative and estate property, even though the plaintiffs alleged face-to-face misrepresentations and individualized reliance. 796 F.3d at 314, 319. The court emphasized that the relevant inquiry focuses on the nature of the harm and theory of liability, and where all investors suffered the same *pro rata* loss resulting from misconduct that injured the company itself, the claims are derivative and may be asserted only by the bankruptcy estate, not individual creditors or equity holders. *Id.* at 318-19.

Here, applying the above principles, the claims asserted by Defendants as plaintiffs in the Karr Action are property of the Debtors' estates. First, all alleged misconduct predated the Petition Date, and the claims existed, if at all, prior to the commencement of the Debtors' bankruptcy cases.

Second, the claims asserted in the Karr Action are quintessentially general claims belonging to the estates. The Amended Complaint asserts claims for fraud, aiding and abetting fraud, a violation of California Penal Code § 496, and violations of California securities laws based on allegations that the Debtors' former officers and directors, investors, professionals, and advisors misrepresented and concealed the Debtors' financial condition and operations. Defendants' theories of liability depend not on any relationship with those Karr Action defendants but, rather, on Karr Action defendants' relationship with the Debtors. As such,  the Defendants' claims are

10

"general" in nature and belong to the Debtors' estates.   Claims of this nature—alleging only indirect injury deriving from harm to the debtor and relying on facts common to all creditors—are the estates' property. *Emoral*, 740 F.3d at 881; *Wilton Armetale*, 968 F.3d at 282; *In re PA Co-Man*, 644 B.R. at 598.

Taking as an example Defendants' claims in the Karr Action against Steven Ballmer and Ballmer Giving LLC (collectively, "Ballmer"), Defendants' allegations and theory of liability are based on Ballmer's relationship with the Debtors, not any relationship between Ballmer and Defendants. Defendants allege that Ballmer funded and invested in Debtor Catona Climate Solutions, LLC ("Catona Climate"), and that Defendants would not have invested or kept their investments in the Debtors if not for Balmer's status as an investor in Catona Climate. But Defendants nowhere allege that they had any relationship or contact with Ballmer. Defendants simply allege that Ballmer's involvement with the Debtors leant an air of legitimacy to them that induced Defendants to invest or remain invested, and that Ballmer failed to disclose Sanberg's fraud to them. Defendants' theory of liability is general in nature because any investor or creditor of the Debtors could assert a similar theory against Ballmer because any investor or creditor could allege that it drew confidence in investing or extending credit based on Ballmer's involvement, or, conversely it would not have invested or extended credit if Ballmer had disclosed Sanberg's fraud.

As in *Emoral* and *Whittaker*, Defendants cannot "demonstrate how any of the factual allegations" are "unique to them as compared to other creditors" of or investors in the Debtors. *Whittaker*, 152 F.4th at 449; *Emoral*, 740 F.3d at 879-80. And, as in *Whittaker* and *Emoral*, Defendants' theory of liability is based on Ballmer's status as an investor in the Debtors, not on Ballmer's relationship with or conduct toward Defendants. *See Whittaker*, 152 F.4th at 449; *Emoral*, 740 F.3d at 879-80. Moreover, the Defendants' claimed harm is "based on an injury to

11

the [Debtors] that creates a secondary harm to all [plaintiffs] regardless of the nature of their underlying claim[s] against the debtor." *Wilton Armetale, Inc.*, 968 F.3d at 282 (citations omitted). The alleged harm is indirect because the claims are "based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors." *Emoral*, 740 F.3d at 881.

Assuming *arguendo* that Defendants' allegations against Ballmer are valid, then any investor or creditor could assert claims based on the same or similar theories of liability. As such, Defendants' claims against Ballmer are general in nature, belong to the Debtors' bankruptcy estates, and may only be asserted by the Trustee. And, to the extent the allegations in the Amended Complaint are true, such that Ballmer knew or should have known about, or actively concealed or participated in, the purported fraud, his actions directly harmed the Debtors, thereby causing indirect harm to the Defendants.

For the same reasons, to the extent they exist, Defendants' claims against David Aranoff, Baker Hostetler LLP, KPMG LLP, Alvarez & Associates, Inc., BDO USA, P.C., Michael Ellis, Inherent Group, LP, AGO Special Situations, LP and Alpha Edison Management Company, LLC likewise are general claims that are property of the estates assertable only by the Trustee. *See SemCrude*, 796 F.3d at 314, 319.

Additionally, as in *SemCrude*, despite certain Defendants' alleged direct interactions with Joseph Sanberg, Ibrahim AlHusseini, and Nate Redmond, the Defendants' alleged harm is no different than the harm suffered by the Debtors and all other investors and creditors. Strikingly similar to the *SemCrude* plaintiffs' allegations, the Defendants assert that Sanberg, AlHusseini, and Redmond misrepresented the Debtors' financial health, which, in turn, induced the Defendants to invest or remain invested in the Debtors. Therefore, like in *SemCrude*, Defendants' "respective

12

losses differ only in amount, not in kind," making their claims against Sanberg, AlHusseini, and Redmond derivative. 796 F.3d at 318-19. The Defendants' alleged damage was done to the Debtors and other investors and creditors alike, all of which relied on the same financial information, and suffered from the same Karr Defendants' alleged malfeasance, whether they had direct interactions with the Sanberg, AlHusseini, and Redmond or not. Because the "injury or wrong complained of was a fraud against" the Debtors and its investors "collectively, the right of action or recovery is in the" Debtors and their estates. *Id*. at 321 (cleaned up). Only the Trustee may assert such claims.

Accordingly, the causes of action asserted in the Karr Action constitute property of the estates under section 541 of the Bankruptcy Code and may be pursued, if at all, only by the Chapter 7 Trustee. Defendants' continued prosecution of those claims constitutes an exercise of control over estate property in violation of section 362 of the Bankruptcy Code and an impermissible attempt to leapfrog other similarly situated creditors through unilateral litigation outside the bankruptcy forum.

### B.      The Preclusive Effects of the Karr Action also Violates the Automatic Stay.

Defendants further violate the automatic stay because findings made in the Karr Action may have a preclusive effect on the Trustee's ability to prosecute claims on behalf of the estates and to adjudicate any proof of claim later filed by Defendants. The Karr Action directly implicates collateral estoppel because factual determinations concerning the Debtors' financial condition, alleged fraud, and the conduct of the Debtors' former officers, directors, investors, and professionals—including Sanberg, Ballmer, and other Karr Defendants named in the Amended Complaint—could affect or otherwise impair the Trustee's ability to pursue estate causes of action arising from the same operative facts. *See, e.g.*, *SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*, 388 B.R. 579, 585 (Bankr. D. Del. 2008). If allowed to proceed, rulings in the

Karr Action could bind or constrain the Trustee through issue preclusion, thereby inhibiting the Trustee from fully and independently prosecuting claims that belong exclusively to the estates. *Id.* Accordingly, as a matter of Delaware law, the Karr Action's potential preclusive effect on the Trustee constitutes an improper exercise of control over estate property and violates the automatic stay. *Id.*

### III.    The Standard for Injunctive Relief under Section 105(a) of the Bankruptcy Code is Satisfied.

Section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 injunctions are governed by the well-known four (4) factor inquiry governing the entry of an injunction under Rule 65 of the Federal Rules of Civil Procedure:

> When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions issued pursuant to Federal Rule of Civil Procedure 65. The four factors which must be considered are (1) the likelihood of the plaintiff's success on the merits, (2) whether plaintiff will suffer irreparable injury without the injunction, (3) the harm to others which will occur in the injunction is granted, and (4) whether the injunction would serve the public interest.

*Am. Imaging Servs., Inc. v. Eagle-Picher Indus, Inc. (In re Eagle Picher Indus.)*, 963 F.2d 855, 858 (6th Cir. 1992) (citation omitted). To protect their "related to" jurisdiction, bankruptcy courts are empowered to issue any necessary order, process, or judgment, including a stay of actions to which the debtor is not a party. *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (citing *Zerand-Bernal Group v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994)). A bankruptcy court can enjoin proceedings in other courts pursuant to section 105(a) when it is satisfied that such proceedings would defeat or impair its jurisdiction over a debtor's case. *Id.* (citing *In re L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993)). A bankruptcy court can issue injunctive relief under section 105

14

even if the requirements for an automatic stay under section 362(a) are not met. *See Penn Terra Ltd. v. Dep't of Env't Res.*, 733 F.2d 267, 273 (3d Cir. 1984) ("[I]n some individual situations… [t]he bankruptcy court, in its discretion, may issue an appropriate injunction, even if the automatic stay is not operative.").

The Third Circuit has held that a party seeking preliminary equitable relief "must meet the threshold for the first two 'most critical' factors; it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If these two factors are met, the court must then consider the remaining two factors and, in its sound discretion, determine if all four factors balance in factor of granting the requested preliminary relief. *Id.*

The Trustee analyzes each of these four (4) factors in turn below.

**A.      The Trustee is Likely to Succeed on the Merits.**

The facts overwhelmingly support entry of a preliminary injunction. It is evident from the face of the Karr Action's Amended Complaint that Defendants are prosecuting claims that are generalized to all creditors and investors of the Debtors and therefore constitute property of the bankruptcy estates under section 541 of the Bankruptcy Code. Defendants assert causes of action for fraud, aiding and abetting fraud, a violation of California Penal Code § 496, and securities violations against the Debtors' former officers and directors, investors, professionals, and advisors, all premised on alleged misconduct that injured the Debtors and, derivatively, all creditors and investors alike.

Further, the Defendants through the Karr Action seeks recovery from the same limited pool of resources that the Chapter 7 Trustee may decide, following her investigation, to pursue for the

benefit of all chapter 7 creditors, including potential insurance proceeds and recoveries from non-debtor third parties whose alleged liability derives from their relationship with the Debtors. The continued prosecution of the Karr Action therefore directly affects the amount of potential assets in the estates and the allocation of property among creditors, such that this Court's exclusive jurisdiction over estate property is defeated or impaired.

To establish a likelihood of success on the merits, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980) (quoting *Oburn v. Sharp*, 521 F.2d 142, 148 (3d Cir. 1970)). At the preliminary injunction stage, "likelihood" does not require a more-likely-than-not showing. *Reilly*, 858 F.3d at 179 n.3. Moreover, an injunction may issue to prevent threatened injuries, even where no final injury has yet occurred. *Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*, 138 F. App'x 431, 434 (3d Cir. 2005). ("Although such injury has not yet occurred, because the purpose of a preliminary injunction is to prevent the occurrence of injuries, the demonstration by [plaintiff] of a 'presently existing actual threat' of injury suffices at this stage of the proceedings.").

In the instant case, the Trustee has established a *prima facie* case that the automatic stay applies to bar the Karr Action because: (1) Defendants assert general claims that are property of the estates; and (2) the Karr Action directly and imminently threatens estate property, including limited sources of recovery that the Trustee seeks to preserve and pursue for the benefit of all chapter 7 creditors. All alleged conduct in the Karr Action predates the Petition Date, and Defendants' theories of liability depend entirely on alleged harm to the Debtors caused by their former insiders, affiliates, and third parties—harm that affected all creditors and investors *pro rata*. Accordingly,

16

the Trustee has satisfied the first factor by demonstrating a reasonable probability of success on the merits that the Karr Action violates the automatic stay.

There is also clear evidence of an existing threat of injury to the estates.

**B.      The Estates Will Suffer Irreparable Harm Absent Injunctive Relief**

The estates will suffer irreparable harm if Defendants are permitted to continue prosecuting the Karr Action. Courts recognize at least two forms of irreparable harm directly applicable here.

First, irreparable harm exists where litigation threatens to deplete an estate's assets. *Fisher*, 155 F.3d at 882. Defendants and the Trustee assert claims against the same defendants, based on the same alleged misconduct, and seek recovery from the same limited pool of assets. Any judgment, settlement, or defense-cost erosion resulting from the Karr Action will diminish assets otherwise available for distribution to all creditors through the bankruptcy process.

Second, irreparable harm arises from the risk of collateral estoppel and record taint. *See, e.g., In re W.R. Grace & Co.*, 386 B.R. 17, 34 (Bankr. D. Del. 2008); *Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs., Inc.)*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (granting a preliminary injunction seeking to enjoin the prosecution of a state-court action against a debtor's directors because, among other things, the state-court action "exposes [the debtor] to collateral estoppel prejudice if it does not participate in that case"). The longer the Karr Action proceeds, the greater the risk that factual findings and legal rulings concerning general estate claims will prejudice or constrain the Trustee, even though the Trustee is not a party to that action.

These harms are neither speculative nor remote. The Karr Action is ongoing and active. Factual findings or legal determinations concerning the Debtors' financial condition, alleged fraud, and the conduct of key actors could have preclusive effects that impair the Trustee's ability to prosecute estate claims. It is critical that the Karr Action not proceed with rulings that may bind or

17

constrain the Trustee's pursuit of claims belonging exclusively to the estates. Continued litigation heightens the risk that Defendants will reach settlements or obtain judgments funded by limited insurance proceeds or other assets, and that courts will render rulings that interfere with the Trustee's exclusive authority to prosecute estate claims.

The Trustee is also aware of several insurance policies which may provide coverage with respect to claims against officers and directors of the Debtors, and on information and belief, the expenditure of funds to defend suits against officers and directors of the Debtors has significantly reduced and will continue to reduce the funds available to pay any settlement with, or judgment against, those parties. (*See* Compl. ¶¶ 9-11.)  The Trustee understands that the policies have been depleted to point that only approximately $800,000 in coverage remains available. (*Id.* ¶ 10.) Thus, the Karr Action directly and imminently threatens the estates' ability to recover on these Policies.

For these reasons, the Trustee has met the second factor, as these harms are real, imminent, and irreparable.

### C.     Defendants Will Suffer No Harm.

As the non-moving party, Defendants will suffer no cognizable harm from the entry of a preliminary injunction. To the contrary, an injunction merely ensures that Defendants are treated in accordance with the orderly and centralized bankruptcy process, rather than being permitted to jump ahead through unilateral state-court litigation. The injunction preserves the status quo while the Trustee fulfills her statutory duties to investigate, prosecute, and recover estate assets for the benefit of all chapter 7 creditors.

Even assuming Defendants could demonstrate some measure of harm (which the Trustee disputes), any such harm is outweighed by the substantial and concrete harm to the estates and other creditors if the Karr Action is allowed to proceed.

**D.     Injunctive Relief is in the Public Interest.**

Enjoining the Karr Action serves the public interest because it protects estate assets from depletion and preserves the integrity of the bankruptcy process. *See Shubert v. Premier Paper Prods., LLC (In re Am. Tissue, Inc.)*, No. 01-10370, 2006 Bankr. LEXIS 3266, at *5 (Bankr. D. Del. Dec. 4, 2006) ("The public interest is served when the Court imposes relief which maintains integrity in financial and business dealings and protects bankrupt estates from misappropriation of assets. Here, granting relief to the Trustee while eliminating or reducing harm to the defendants satisfies the final requirement for the issuance of a preliminary injunction."); *see also In re W.R. Grace & Co.*, 386 B.R. at 36 (holding that the public interest weighs in favor of issuing an injunction when considering the volume of claims, jurisdictional spread, and numerous controversies).

The public interest is further advanced by preventing piecemeal litigation, inconsistent rulings, and preferential recoveries that undermine the uniform administration of bankruptcy estates. And as the Third Circuit has observed, where a plaintiff demonstrates a likelihood of success on the merits and irreparable injury, the public interest will almost always favor injunctive relief. *Am. Tel. & Tel. Co. v. Winback & Conserver Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

Preserving the remaining assets of the estates and safeguarding the Trustee's ability to pursue recoveries for the collective benefit of all chapter 7 creditors is essential. Accordingly, the public interest will be served by enjoining the Defendants from continuing to prosecute the Karr Action and maintaining the integrity of the bankruptcy system.

**IV.     In the Alternative, the Court Should Issue a Preliminary Injunction under Bankruptcy Rule 7065.**

This Court is also empowered to issue a preliminary injunction enjoining the Defendants in here from pursuing the Karr Action under Rule 7065 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"). The standards for such orders are similar to those applicable to a section 105(a) injunction as set forth above. *See, e.g.*, *In re Am. Film Techs., Inc.*, 175 B.R. at 848-49. As explained above, these requirements are easily satisfied here.

**V.      A Temporary Restraining Order is Necessary to Preserve the *Status Quo*.**

In the Third Circuit, the four (4) requirements a movant must satisfy to obtain the emergent injunctive relief are the same factors governing a request for a preliminary injunction. *Koons v. Reynolds*, 649 F. Supp. 3d 14, 21-22 (D.N.J. 2023) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017)). The need for emergent relief is even greater here because multiple dispositive motions—including motions to dismiss under California's anti-SLAPP statute—are scheduled for hearing on April 22, 2026, in the Karr Action. (*See* Compl. ¶ 40.) Absent an immediate stay, that hearing is likely to result in factual findings and legal rulings that would prejudice the Trustee by impairing her ability to prosecute claims belonging to the estates. Entering a temporary restraining order staying the Karr Action, at least until this Court rules on the Trustee's request for a preliminary injunction, will not harm the Karr Defendants.[4] Because the Trustee has satisfied the four requirements for preliminary injunctive relief, a temporary restraining order is necessary to preserve the status quo and avoid the real and imminent risk of harm to the estates posed by the impending April 22, 2026 hearing.

---

[4] For the same reasons, the Trustee respectfully requests that the Court waive any requirement that she post security in connection with the proposed temporary restraining order or preliminary injunction, as permitted by Bankruptcy Rule 7065. Even if the Court ultimately denies injunctive relief, a brief stay of the Karr Action will not pose any meaningful risk of economic harm to the Karr Defendants.

**CONCLUSION**

**WHEREFORE**, for foregoing reasons, the Trustee respectfully requests that this Court: (i) grant the Motion and the relief requested therein; (ii) enter a temporary restraining order and preliminary injunction staying the Defendants herein from continuing their prosecution of the Karr Action pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 7065, substantially in the form of the Proposed Order attached to the Motion; and (iii) grant such further relief as this Court deems just and proper.

Respectfully Submitted,

Dated: April 10, 2026                                **CONNELL FOLEY LLP**

*/s/ Katharina Earle*
Katharina Earle (6348)
1000 North West Street
Wilmington, DE 19801
Telephone:     (302) 679-4297
Email:             kearle@connellfoley.com

and

Robert K. Malone (admitted *pro hac vice*)
Brett S. Theisen (admitted *pro hac vice*)
Dale E. Barney (*pro hac vice* forthcoming)
Mark Marsella (*pro hac vice* forthcoming)
56 Livingston Avenue
Roseland, NJ 07068
Telephone:   (973) 535-0500
E-mail:         rmalone@connellfoley.com
                    btheisen@connellfoley.com
                    dbarney@connellfoley.com
                    mmarsella@connellfoley.com

*Litigation Counsel for Jami B. Nimeroff as*
*Chapter 7 Trustee for CTN Holdings, Inc., et al.*

21