# EXHIBIT A
**(February 20 Letter)**

# LANDIS RATH & COBB LLP

A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW

919 MARKET STREET, SUITE 1800
P.O. BOX 2087
WILMINGTON, DELAWARE 19899
www.lrclaw.com

Kimberly A. Brown
Direct Dial: 302.467.4436
Email: brown@lrclaw.com

Telephone: 302.467.4400
Facsimile: 302.467.4450

February 20, 2026

**_VIA ELECTRONIC MAIL_**
Brett S. Theisen
Connell Foley LLP
875 Third Avenue-21st Floor
New York, NY 10022
btheisen@connellfoley.com

RE:    **_Karr, et al. v. Sanberg, et al._**, Case No. 25STCV20376 (Cal. Supp. Ct.)

Dear Mr. Theisen,

This firm serves as bankruptcy counsel to the plaintiffs (the "Plaintiffs")[1] in the above-referenced proceeding (the "Civil Action"). I write in response to your letter dated February 6, 2026 (the "February 6 Letter") demanding the Plaintiffs cease and desist prosecution of the Civil Action and voluntarily dismiss with prejudice all claims brought in the complaint filed on November 3, 2025 (the "Complaint").

Contrary to the assertions in the February 6 Letter, the Plaintiffs are properly pursuing their direct, independent claims against non-debtor third parties who are culpable in the fraud perpetuated against them. These independent claims are based on harm caused directly to each of the individual Plaintiffs (separate and apart from whatever harm such non-debtor third parties may have caused the Debtors[2]).

As explained below, the Plaintiffs' claims in the Civil Action arise solely from their reliance on and losses stemming from the Defendants'[3] direct statements and actions intended to fraudulently induce each of the Plaintiffs to purchase stock, refrain from selling stock, to accept the Debtors' stock as collateral for loans, and make loans to the Debtors and non-debtor third

---

[1]    The Complaint names the following parties as Plaintiffs: Mr. Donald R. Karr ("Karr"), Miller Family Legacy LLC ("Miller LLC"), Mr. Louis R. Miller ("Miller"), ALS Revocable Trust ("ALS Trust"), Impact Fund II, LP ("Impact Fund II"), Praesumo Holdings, LLC ("Praesumo"), Mr. Ravi Sarin ("Sarin"), Paul Soros Family Trust 2010 A ("PS Trust"), Chicago Atlantic Finance LLC, Chicago Atlantic Credit Company, LLC and Chicago Atlantic Opportunity Finance LLC (collectively, "Chicago Atlantic").

[2]    Terms not defined herein shall have the meanings set forth in the February 6 Letter or the Complaint as applicable.

[3]    The Complaint names the following entities as defendants: Joseph Sanberg; Ago Special Situations, LP; Steven Ballmer; Ballmer Giving LLC; Ibrahim Alhusseini; Nate Redmond; Alpha Edison Management Company, LLC; David Aranoff; Baker Hostetler LLP; KPMG LLP; Alvarez & Associates, Inc.; BDO USA, P.C.; Michael Ellis; Inherent Group, LP; and DOES 1 through 30, (collectively, the "Defendants").

Brett S. Theisen
February 20, 2026
Page 2

parties.  It is black letter law that such claims are personal, direct claims that belong to the Plaintiffs, not to the Debtors' estates.  Therefore, the Civil Action is not subject to the automatic stay.

### *The Plaintiffs' Pursuit of Direct Claims for Their Losses*

As detailed in the Complaint, the Plaintiffs engaged in direct interactions with the Defendants between 2020 and 2025.  Complaint ¶¶ 131-67.  As a result of their relationships with the Defendants, the Plaintiffs suffered losses that exceed $50 million.  To mitigate their damages against the Debtors' estates and to seek redress from non-debtor third parties for the particularized injuries they suffered at their hands, the Plaintiffs have pursued their direct claims against such non-debtor third parties to whom the automatic stay is inapplicable.  In the Complaint, the Plaintiffs state claims for fraud, aiding and abetting fraud, violations of California Penal Code § 496, and violations of California corporate securities law (collectively, the "Claims") against the Defendants.

### *The Automatic Stay Is Inapplicable to the Plaintiffs' Claims*

Bankruptcy Code section 362(a) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . ."  11 U.S.C. § 362(a)(3).  However, a claim is property of the estate only if (1) it "existed at the commencement of the filing and the debtor could have asserted the claim on its own behalf under state law" and (2) it is a "general one, with no particularized injury rising from it."  *Emoral Inc. v. Diacetyl* (*In re Emoral, Inc.*), 740 F.3d 875, 879 (3rd Cir. 2014).  "On the other hand, if the claim is specific to the creditor, it is a 'personal' one and is a legal or equitable interest only of the creditor."  *Id.* (quoting *Bd. of Trustees of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 170 (3d Cir. 2002)); *see Protopapas v. Brenntag AG* (*In re Whittaker Clark & Daniels Inc.*), 152 F.4th 432, 448 (3d Cir. 2025) (same).  Because the Claims are personal and specific to Plaintiffs, they are not estate property, and the automatic stay does not apply to them.

   A.  *The Claims Are Personal to the Plaintiffs*

The Plaintiffs have direct claims against third-party, non-debtor defendants who breached statutory and common law duties owed to the Plaintiffs—not to the Debtors.  "As *Emoral* makes clear, allegations based on 'direct, particularized conduct and injury' in contrast to a mere continuation theory are not generalized and do not belong to the debtors' estate."  *In re Caribbean Petroleum Corp.*, 512 B.R. 774, 780 (Bankr. D. Del. 2014).  "The alleged illegality may have caused other injuries in addition to those caused to the [particular creditor], but the direct injury to the [plaintiff]. . . defines the nature of plaintiffs' claim as a personal one."  *Foodtown*, 296 F.3d at 170.  "When reviewing a complaint to determine whether the claims belong to the debtor and thus are property of the estate, . . . the same set of facts may give rise to some claims that are property of the estate and some that are not."  *In re Cornucopia Oil & Gas Co., LLC*, No. 19-11781, 2024 Bankr. LEXIS 468, at *10 (Bankr. Del. Feb. 26, 2024).

It is plainly evident that each of the Claims are personal to the Plaintiffs, not generalized claims based on harm suffered equally by all creditors. The Complaint alleges that the Defendants

Brett S. Theisen
February 20, 2026
Page 3

directly and particularly harmed the Plaintiffs in the form of monetary losses they suffered after the Defendants fraudulently induced them to invest in Catona and concealed material information in violation of applicable state laws.  Each of the Claims is thus based on "direct, particularized conduct and injury." *Caribbean Petroleum Corp.*, 512 B.R. at 780. As such, the Claims constitute separate and direct causes of action that cannot be property of the Debtors' estates. *See In re Port Neches Fuels, LLC*, 660 B.R. 177, 193 (D. Del. Mar. 27, 2024); *accord Caribbean Petroleum*, 512 B.R. at 780 (holding that where "[plaintiff]'s claims against the [defendant] are direct in nature . . . Debtors did not own and therefore could not bring" them); *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) (holding that "only the creditor himself can enforce" "the creditor's own direct—not derivative—claim against the third party"). The mere fact that some of the misconduct that contributed to the Plaintiffs' harm also may have caused harm to other constituents is immaterial. *See id.*

The Trustee's arguments to the contrary are unavailing. First, the Trustee wrongly asserts that "Plaintiffs' theory of liability depends not on any relationship with those Defendants but, rather, on those Defendants' relationship with the Debtors."  Letter at 6.  In fact, the only theories of liability asserted in the Complaint are those arising from the Defendants' actions toward and duties violated with respect to the Plaintiffs.  The Complaint alleges numerous facts concerning the Defendants' direct relationships with and statements to the Plaintiffs.  These facts include but are not limited to:

- Defendant Sanberg directly solicited Plaintiffs Miller LLC, Miller, and Karr to purchase shares in Catona, including by speaking with Plaintiff Miller "multiple times" and directly providing Plaintiff Miller with "fraudulent financial statements" over a period of years "from 2020 through 2025." Complaint ¶¶ 131, 135-36.

- Defendant Sanberg directly solicited Plaintiff ALS Trust, including through "multiple conversations with the trustee of the ALS Trust, Andrew L. Sadler," to purchase his own shares in Cantona by "falsely inform[ing] Mr. Sandler that Defendant Sanberg was selling a small portion of his founder's stock in Catona for the purpose of providing funding for his (Sandberg's) foundation." Complaint ¶¶ 138-39.

- Defendant Sanberg directly spoke to Mr. Skaff, a representative of Plaintiff Impact Fund II and induced Plaintiff Impact Fund II to make a loan of $2 million to Catona in reliance on his fraudulent misrepresentations, including that Catona "was a successful, legitimate business." Complaint ¶¶ 143-145.

- Defendants Sanberg, AlHusseini and Redmond directly solicited Plaintiff Praesumo, including through direct conversations that took place "on multiple occasions" and by providing Plaintiff Praesumo with a "false financial report" and "endors[ing] the financial report and the financial statements contained therein." Complaint ¶¶ 147-149.

- Defendant Sanberg directly solicited Plaintiff Sarin by personally "represent[ing] that Catona was a successful, legitimate business," and knowingly concealing his participation "in a fraudulent scheme." Complaint ¶¶ 153-154.

- Defendants Sanberg, AlHusseini and Redmond directly solicited and induced Plaintiff Chicago Atlantic "to make a $16 million loan to Sanberg, through a company owned by

Brett S. Theisen
February 20, 2026
Page 4

Sanberg, secured by shares in Catona" by fraudulently misrepresenting that Catona was "a successful, legitimate business" and actively endorsing and vouching for "grossly inflated, false Catona financial statements." Complaint ¶¶ 153-154.

Contrary to the Trustee's assertions, the Plaintiffs' Claims arise from the Defendants' unlawful conduct taken to induce them to invest in or make loans to Catona or accept Catona shares as collateral for loans made to the Defendants. Other creditors cannot (and do not) assert claims that they were fraudulently induced to invest or make loans as a result of the Defendants' specific conduct toward the Plaintiffs.

The Trustee also asserts that the Plaintiffs fail to allege particularized injuries because "[t]he Plaintiffs' alleged damage was done to the Debtors and other investors and creditors alike, all of which relied on the same financial information." Letter at 7. The Trustee is wrong: the Complaint alleges, for example, that the Defendants misrepresented the legitimacy and financial health of Catona to induce Plaintiff Chicago Atlantic to extend a $16 million loan to Defendant. Complaint ¶ 153-154. The Debtors' other creditors did not suffer the same harm, and the possibility that they may have suffered different or similar harms does not somehow divest the Plaintiffs of their Claims arising from the particularized harms that they individually and directly suffered. *See Foodtown*, 296 F.3d at 170.

### B. The Claims Cannot Be Asserted by the Chapter 7 Trustee

A claim-by-claim analysis confirms that each of the Claims is a direct claim that can be asserted only by the Plaintiffs.

### i. The Plaintiffs Have Direct Claims for Fraud, Aiding & Abetting Fraud, and Violations of Penal Code § 496

Delaware courts have affirmed that, "tort claim[s] for fraud in connection with the purchase or sale of shares" are "[q]uintessential examples of personal claims." *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1056 (Del. Ch. 2015). The distinction between these independent, personal claims and derivatives claims lies in the fact that "the nature of the underlying property does not matter." *Id.* Instead, "the cause of action arises out of the false representations made by the buyer or seller on which the counterparty relied to her detriment, suffering causally related damages as a consequence." *Id.* Likewise, California courts have found that shareholders plead direct claims by alleging that they were wrongfully induced to purchase or refrain from selling stock as a result of fraudulent or negligent misrepresentations upon which they actually relied. *See Schuster v. Gardner*, 127 Cal. App. 4th 305 (2005).

The Complaint contains numerous well-pled allegations that the Plaintiffs engaged in specific, personal interactions with the Defendants in which the Defendants made material misrepresentations—upon which the Plaintiffs actually relied—to induce the Plaintiffs to purchase stock, refrain from selling stock, or make loans. *See, e.g.,* Complaint ¶¶ 191-199. These Claims are the Plaintiffs' "own separate and direct cause[s] of action" that "cannot belong to the estate." *Port Neches Fuels*, 660 B.R. at 193. Mere overlap between factual allegations that the Trustee

Brett S. Theisen
February 20, 2026
Page 5

may make and the Plaintiffs make does not divest the Plaintiffs of their Claims relating to those facts. *See In re Reliance Acceptance Grp., Inc.*, 235 B.R. 548, 554 (D. Del. 1999) (reversing finding that shareholder claims were property of the estate where based on the same or similar facts and asserted against the same defendants).

ii.      *The Plaintiffs Have Direct Claims for the Defendants' Securities Law Violations*

Likewise, the Debtors could not have asserted the Plaintiffs' claims for securities violations because these are direct claims that lie solely with the Plaintiffs as purchasers of the securities. *See Wells Fargo Capital Fin., LLC v. Noble* (*In re R.E. Loans, LLC*), 519 B.R. 499, 517 (Bankr. N.D. Tex. 2014) (determining that plaintiffs' claims under Cal. Corp. Code § 25401 were direct claims that could not be brought by the debtor); *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, 2005 U.S. Dist. LEXIS 31041, at *18 (N.D. Cal. Nov. 3, 2005) (finding a direct claim where plaintiff did not seek damages for an injury to the company but instead sought recovery for a breach of the duty of disclosure owed to plaintiff as a prospective investor).

iii.      *The Trustee's Claims Would Be Barred By In Pari Delicto*

Lastly, the Plaintiffs are concerned that to the extent the Debtors had their own claims against these Defendants that could be brought by the Trustee, such claims could be barred under the doctrine of *in pari delicto*. The Third Circuit and courts across the country have held that neither a wrongdoer nor its successor in interest can recover for matters in which it bears fault. *See, e.g., Off. Comm. of Unsecured Creditors v. R.F. Lafferty*, 267 F.3d 340, 354 (3d Cir. 2001) (stating that "[t]he doctrine of *in pari delicto* provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim").

As the Trustee undoubtedly is aware, the Second Circuit applied the doctrine of *in pari delicto* to bar the Madoff estate's trustee from bringing *any* common law claims, recognizing that a "claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation" and that a "debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative." *In re Bernard L. Madoff Inv. Securities LLC* (*In re BLMIS*), 721 F.3d 54, 63 (2d Cir. 2013). The Debtors here – like the Madoff estate – committed "grave" misconduct, and the Trustee may be barred from bringing any claims against the Defendants. *See also In re Liberty State Benefits of Delaware, Inc.*, 541 B.R. 219, 235 (Bankr. D. Del. 2015) (dismissing trustee's claims under *in pari delicto* where debtors played "a substantial role" in the wrongdoing).

Consequently, in addition to believing that their claims against the Defendants in the Civil Action are not derivative claims, the Plaintiffs are concerned that the Trustee will be barred from prosecuting any claims against these defendants or will lack standing[4] to bring such claims. Should

---

[4]      *See Guiliano v. Schnabel* (*In re DSI Renal Holdings, LLC*), 574 B.R. 446, 479-80 (Bankr. D. Del. 2017) (ruling that the trustee does not have standing to assert a claim seeking a remedy for damages to a particular subset of creditors); *Think3 Litig. Trust v. Zuccarello* (*In re Think3, Inc.*), 529 B.R. 147, 186-88 (Bankr. W.D. Tex. 2015) (holding litigation trust established pursuant to a confirmed plan lacked standing to bring claims against certain former directors and officers for injuries to and damages allegedly suffered by certain creditors of the debtor);

Brett S. Theisen
February 20, 2026
Page 6


that result, the Debtors' estates and their creditors will see no recovery from any claims asserted by the Trustee.

We welcome dialogue with respect to the issues herein and are amenable to a call, if it would be helpful, to try to resolve these issues on a consensual basis.

Very truly yours,

*/s/ Kimberly A. Brown*

Kimberly A. Brown


cc:     Louis R. Miller
        Colin H. Rolfs
        Colin R. Robinson
        William Sullivan
        Robert Malone
        Katharina Earle

---

*Apostolou v. Fisher* (*In re Lake States Commodities, Inc.*), 188 B.R. 958 (N.D. Ill. 1995) (holding creditors had standing to pursue, among other claims, fraud claims directly against certain non-debtor co-conspirators for injuries allegedly suffered due to the actions of the defendants and the debtors because the bankruptcy trustee lacked standing, as the claims were not property of the estates).