IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CTN Holdings, Inc., *et al.*,[1] | Case No. 25-10603 (TMH) |
| Debtors. | (Jointly Administered) |
| JAMI B. NIMEROFF, as chapter 7 trustee for CTN Holdings, Inc., *et al.*, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 26-50233 (TMH) |
| DONALD R. KARR; MILLER FAMILY LEGACY LLC; LOUIS R. MILLER; ALS REVOCABLE TRUST; EMERGING IMPACT FUND II, LP; PRAESUMO HOLDINGS, LLC; RAVI SARIN; PAUL SOROS 2010 FAMILY TRUST A; CHICAGO ATLANTIC FINANCE LLC; CHICAGO ATLANTIC CREDIT COMPANY, LLC; and CHICAGO ATLANTIC OPPORTUNITY FINANCE LLC, | **Obj. Deadline: April 28, 2026**<br>**Hearing Date: May 22, 2026 at 10:00 a.m. (ET)**<br><br>**Ref. Adv. No. 3** |
| Defendants. | |

**KARR ACTION PLAINTIFFS' OBJECTION TO CHAPTER 7 TRUSTEE'S MOTION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION PURSUANT TO SECTIONS 105(A) AND 362(A) OF THE
BANKRUPTCY CODE AND RULE 7065 OF THE FEDERAL RULES
<u>OF BANKRUPTCY PROCEDURE</u>**

Mr. Donald R. Karr ("<u>Karr</u>"), Miller Family Legacy LLC ("<u>Miller LLC</u>"), Mr. Louis R.

Miller ("<u>Miller</u>"), ALS Revocable Trust ("<u>ALS Trust</u>"), Emerging Impact Fund II, LP

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are CTN Holdings, Inc. (9122), CTN SPV Holdings, LLC (8689), Make Earth Green Again, LLC (4441), Aspiration QFZ, LLC (1532), Aspiration Fund Adviser, LLC (4214), Catona Climate Solutions, LLC (3375) and Zero Carbon Holdings, LLC (1679). The mailing address for the Debtors is 548 Market Street, PMB 72015, San Francisco, CA 94101-5401.

("Impact Fund II"), Praesumo Holdings, LLC ("Praesumo"), Mr. Ravi Sarin ("Sarin"), Paul Soros 2010 Family Trust A ("PS Trust"), Chicago Atlantic Finance LLC, Chicago Atlantic Credit Company, LLC and Chicago Atlantic Opportunity Finance LLC (collectively, "Chicago Atlantic," and together with Karr, Miller LLC, Miller, ALS Trust, Impact Fund II, Praesumo, Sarin, and PS Trust, the "Karr Action Plaintiffs") hereby object (this "Objection") to the *Chapter 7 Trustee's Motion for Entry of Temporary Restraining Order and Preliminary Injunction Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure* [Adv. D.I. 3] (the "Motion").[2] In support of the Objection, the Karr Action Plaintiffs rely on the contemporaneously filed (1) *Declaration of Louis R. Miller in Support of Karr Action Plaintiffs' Objection to Chapter 7 Trustee's Motion for Entry of Temporary Restraining Order and Preliminary Injunction Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure* (the "Miller Declaration") and (2) *Declaration of Tony Cappell in Support of Karr Action Plaintiffs' Objection to Chapter 7 Trustee's Motion for Entry of Temporary Restraining Order and Preliminary Injunction Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure* (the "Cappell Declaration") and respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1.      The Trustee's Motion must fail for a simple reason: the Karr Action Plaintiffs' claims are not property of the Debtors' estates. The Trustee accuses the Karr Action Plaintiffs of engaging in "efforts to end-run [the bankruptcy] process" by prosecuting the Karr Action. Mot. at 3. This is wrong. The Karr Action Plaintiffs are pursuing a single goal—holding non-

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3]    Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them in the body of this Objection.

debtor third parties accountable for the direct harms caused by their unlawful conduct toward each of the Karr Action Plaintiffs.

2.    The Trustee's goal is equally plain: to prevent the Karr Action Plaintiffs from "recover[ing] from the same pool of . . . assets of potential defendants" from which she may also seek recovery. Mot. ¶ 29. But the Bankruptcy Code authorizes no such relief. The automatic stay does not enjoin third party litigation against non-debtors and cannot prevent the Karr Action Plaintiffs from seeking recovery for their independent, direct claims. Nor does it support the Trustee's extraordinary request that the Court bar the Karr Action Plaintiffs from seeking recovery from non-debtor assets solely to ensure they remain available for the Trustee's possible future recovery.

3.    The automatic stay does not prohibit a third party from suing another non-debtor third party on direct, non-derivative claims because a bankruptcy estate may also have claims against the same non-debtors. The Trustee fails to explain how the Individual Claims are anything other than personal, direct claims that could only be asserted by the Karr Action Plaintiffs themselves. The possibility that the Karr Action Plaintiffs may recover damages from third parties against whom the Trustee also holds claims does not transform the Individual Claims into estate property. The Karr Action plainly falls outside the scope of the automatic stay.

4.    As alleged in the Complaint and discussed below, Defendant Sanberg, aided and abetted by Ballmer and the other Defendants, engaged in a calculated scheme to solicit and induce investments from targeted individuals and entities for their own personal profit. In pursuit of this objective, they misrepresented and concealed the true circumstances of these investments, omitted material information in violation of California law, and communicated misleading information to provide an influx of capital for their own purposes. They actively and personally solicited the Karr Action Plaintiffs to make investments in Catona or extend loans, resulting in losses that exceed $50 million. As a result, the causes of action in the Complaint are based on the specific harms

caused by the Defendants, separate and apart from any harm the Defendants may have inflicted on the Debtors.

5. The Trustee relies on inapposite cases in which creditors sought recovery from non-debtors for harm arising from a *debtor's* wrongful conduct or a defendant's wrongdoing *toward the debtor*. There is no such nexus here—the Karr Action Plaintiffs' claims are not contingent on the Debtors' own liability to the Karr Action Plaintiffs, or the Defendants' liability to the Debtors, but are wholly independent. The Trustee's focus on the shared set of facts and supposed similarities between the Individual Claims and any potential claims held by the Debtors' estates is misplaced. The Complaint seeks recovery based on independent harms to the Karr Action Plaintiffs that directly resulted from the fraudulent, actionable conduct of non-debtor Defendants, and the Debtors could not have asserted claims for fraudulent inducement against the Defendants.

6. Likewise, the Trustee can point to no exceptional circumstance that would justify extending the automatic stay to bar third party litigation against non-debtors. The Debtors are not pursuing reorganization, and there is no risk of disruption to an active restructuring process. The Trustee's proffered bases—collateral estoppel and preservation of non-debtor assets for her own recovery—are unavailing. First, the Trustee is not in privity with the Karr Action Plaintiffs and cites no authority to support the proposition that litigation of direct claims against non-debtor defendants could preclude a bankruptcy trustee from litigating estate claims. Second, the Bankruptcy Code does not imbue the Trustee with an exclusive right to recover non-debtor assets ahead of a non-debtor's other creditors.

7. For the same reasons, the Trustee's request for a preliminary injunction must fail. There is no reasonable likelihood that the Trustee would succeed on the merits, and the Trustee can show no irreparable harm that would occur absent an injunction. Courts have made clear that an extension of the automatic stay, and accompanying injunction, are extraordinary measures,

"reserved for the rarest of circumstances." *In re Nat'l Brokers of Am., Inc.*, 663 B.R. 661, 670 (Bankr. E.D. Pa. 2024). No such circumstances meriting this extraordinary relief are present here.

<strong><u>RELEVANT FACTUAL BACKGROUND</u></strong>

***The Defendants' Fraudulent Scheme***

8.      Defendant Joseph Sanberg ("Sanberg"), a California businessman, founded CTN Holdings, Inc. ("Catona") in 2013. Compl. ¶ 2. From 2020 through 2025, Sanberg fraudulently induced the Karr Action Plaintiffs to invest, directly or indirectly, in Catona. *Id.* ¶¶ 135-37. Each of the Karr Action Plaintiffs' investments is set forth at paragraphs 130 through 167 of the Complaint. Compl. ¶¶ 130-67; Miller Decl. ¶ 5.

9.      Catona was not a public company, where investments are facilitated by public markets. Miller Decl. ¶ 4. Sanberg personally solicited each of the Karr Action Plaintiffs' investments by misrepresenting Catona's success and failing to disclose the true state of Catona's business. *Id.* ¶ 3; Compl. ¶¶ 131-67; Cappell Decl. ¶¶ 3-10. The other Defendants aided and abetted Sanberg's fraudulent inducement of the Karr Action Plaintiffs' investments. Compl. ¶¶ 10, 40, 90-98, 182-86; Miller Decl. ¶¶ 3, 16; Cappell Decl. ¶¶ 3, 7, 9, 11. Certain of the other Defendants also directly made misleading representations to certain of the Karr Action Plaintiffs. Compl. ¶¶ 90-98; Miller Decl. ¶¶ 5, 15-16; Cappell Decl. ¶ 3.

10.      Sanberg and other Defendants personally and directly targeted the Karr Action Plaintiffs and actively misrepresented the nature of their investments to induce the Karr Action Plaintiffs' investments for their own financial and reputational benefit. Compl. ¶¶ 90-98; Miller Decl. ¶ 5; Cappell Decl. ¶¶ 3-4. At the time they were initially solicited by Sanberg and other Defendants, none of the Karr Action Plaintiffs were current shareholders or otherwise affiliated with the Debtors. Miller Decl. ¶ 4.

11.      Sanberg and the other Defendants misled the Karr Action Plaintiffs in multiple ways. Sanberg and other Defendants took steps to artificially inflate Catona's apparent value and

mislead certain potential investors, including by drafting and providing the Karr Action Plaintiffs with financial reports and other documents they knew contained false statements and material omissions. Compl. ¶¶ 90-98; Miller Decl. ¶¶ 10-11; Cappell Decl. ¶¶ 5-8.

12.     Sanberg also relied on a corrupt deal with Defendant Steve Ballmer ("Ballmer"), the billionaire owner of the Los Angeles Clippers, to mislead the Karr Action Plaintiffs. Compl. ¶ 50; Miller Decl. ¶¶ 13-14; Cappell Decl. ¶ 9. By 2021, Sanberg desperately needed a significant cash infusion to avoid Catona's collapse and his own resulting public embarrassment and financial ruin. Compl. ¶¶ 4-5. Ballmer was looking for a solution to his own problem at the same time. Ballmer hoped to induce star player Kawhi Leonard ("Leonard") to re-sign with his team but needed a way to covertly funnel millions in additional compensation to Leonard, in derogation of the National Basketball Association's (the "NBA") salary cap rules. *Id.* ¶¶ 5-7, 43-47. Thus, it was kismet—Sanberg and Ballmer would work together to solve both problems through improper means.

13.     Together, they engineered and personally carried out a fraudulent scheme: Ballmer would appear to invest in, promote, and lend legitimacy to Catona, enabling Sanberg to target and induce certain investors to commit capital or refrain from liquidating equity positions for his own gain. *Id.* ¶¶ 49-52; Miller Decl. ¶ 13. In exchange, Sanberg would provide Ballmer with a means to evade the NBA's salary cap by channeling Ballmer's supposed Catona investment into Leonard's pockets through a sham endorsement deal. Compl. ¶¶ 49-52; Miller Decl. ¶ 13. At all times, Ballmer was fully aware of Sanberg's plan to target and harm the Karr Action Plaintiffs and willingly aided Sanberg for his personal benefit. Compl. ¶ 99.

14.     Each of the Karr Action Plaintiffs relied on Sanberg's false representations about Catona and Ballmer's purported support for the company to their detriment. Miller Decl. ¶¶ 12, 14; Cappell Decl. ¶¶ 10-11. Some purchased shares directly in Catona. Compl. ¶¶ 134, 141, 151, 155, 159, 166. Some made investments through entities owned or controlled by Sanberg, including

Defendant AGO Special Situations, LP. Miller Decl. ¶ 9; Cappell Decl. ¶ 10. Others made loans secured by shares of Catona as collateral. Compl. ¶¶ 145, 198; Cappell Decl. ¶ 10. None of the Karr Action Plaintiffs would have made these investments, but for the false and misleading representations made to them by Sanberg, aided and abetted by the other Defendants. *Id.* ¶¶ 137, 142, 146, 152, 156, 160, 167; Miller Decl. ¶ 14; Cappell Decl. ¶ 11. In total, the Karr Action Plaintiffs were damaged in excess of $50 million. Compl. at 38.

15.     On February 28, 2025, the U.S. Department of Justice (the "DOJ") filed a criminal complaint against Sanberg. *See* Adv. D.I. 4, Ex. A. On August 20, 2025, the DOJ filed a superseding information, charging Sanberg with two counts of wire fraud and criminal forfeiture. *Id.*, Ex. B. In October 2025, Sanberg pled guilty to the charges.[4] One other Defendant, former Catona board member AlHusseini, has also pled guilty to criminal fraud associated with Sanberg's scheme. *Id.* Sanberg and AlHusseini await sentencing.

***The Bankruptcy Cases***

16.     On March 30, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 (the "Chapter 11 Cases") in the U.S. Bankruptcy Court for the District of Delaware (the "Court").

17.     On May 20, 2025, the Court entered the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay and (V) Granting Related Relief* [D.I. 204] (the "Final DIP Order") approving, inter alia, a settlement (the "Funding Settlement") between and among the Debtors, Inherent Group, LP ("Inherent"), as DIP lender, and

---

[4] Criminal Division, U.S. Dep't of Justice, *Pending Criminal Division Cases*, *United States v. Joseph N. Sanberg; United States v. Ibrahim A. AlHusseini* (updated April 24, 2026), https://www.justice.gov/criminal/case/united-states-v-joseph-n-sanberg-court-docket-no-25-cr-200-cd-california-united.

the Official Committee of Unsecured Creditors (the "UCC"). The Final DIP Order also authorized the release of the Debtors' claims against Inherent. *See* Final DIP Order ¶¶ 7, 18. Pursuant to the Funding Settlement, Inherent agreed to provide certain litigation funding to the UCC or any Chapter 7 trustee and share in the proceeds of any litigation. *See* Final DIP Order, Ex. 3 ¶ 3.

18.     On June 3, 2025, the Court entered an order approving the sale of substantially all of the Debtors' assets to Inherent [D.I. 274]. The Debtors filed a Notice of Closing of Sale [D.I. 297] on June 17, 2025. As identified below, Inherent is a defendant in the Karr Action.

19.     Subsequently, on August 7, 2025, the Court entered an order converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code [D.I. 351].

***The Karr Action***

20.     On July 9, 2025, the Karr Action Plaintiffs commenced an action styled as *Karr, et al. v. Sanberg, et al.*, Case No. 25STCV20376 (Cal. Super. Ct.) (the "Karr Action") in the Superior Court of the State of California by filing a complaint.[5] Adv. D.I. 4, Ex. C; Miller Decl. ¶ 2. The Karr Action Plaintiffs seek recovery of over $50 million in damages resulting from the Defendants' fraudulent inducement, misrepresentations and violations of state law. Compl. ¶ 38.

21.     On November 3, 2025, the Karr Action Plaintiffs filed an amended complaint (the "Complaint") alleging the following claims (the "Individual Claims") against the Defendants:

| Count | Cause of Action | Summary of Factual Allegations |
|---|---|---|
| 1 | Fraud | All Karr Action Plaintiffs allege Defendant Sanberg concealed materials facts and made material misrepresentations to induce the Karr Action Plaintiffs to invest in Catona, directly or indirectly, and/or continue to hold their shares in Catona. |
| 2 | Fraud | Karr Action Plaintiffs Praesumo and Chicago Atlantic allege Defendants Sanberg, Redmond and Alhusseini manufactured false financial statements to fraudulently induce Praesumo and Chicago Atlantic to make a loan to Sanberg. |

---

[5]     The Complaint names the following entities as defendants: Sanberg; AGO Special Situations, LP ("AGO"); Ballmer; Ballmer Giving LLC ("Ballmer Giving"); Ibrahim Alhusseini ("Alhusseini"); Nate Redmond ("Redmond"); Alpha Edison Management Company, LLC ("Alpha Edison"); David Aranoff ("Aranoff"); Baker Hostetler LLP ("Baker Hostetler"); KPMG LLP ("KPMG"); Alvarez & Associates, Inc. ("Alvarez"); BDO USA, P.C. ("BDO USA"); Michael Ellis ("Ellis"); Inherent; and DOES 1 through 30, (collectively, the "Defendants").

| Count | Cause of Action | Summary of Factual Allegations |
|---|---|---|
| 3 | Aiding and Abetting Fraud | The Karr Action Plaintiffs allege that Defendants AGO, Ballmer, Ballmer Giving, Alhusseini, Redmond, Alpha Edison, Aranoff, Baker Hostetler, KPMG, Alvarez, BDO USA, Ellis, and Inherent knew that Sanberg was making false or misleading statements to the Karr Action Plaintiffs to induce them to invest in or hold positions in Catona, directly or indirectly, and substantially assisted Sanberg by, inter alia, helping him to conceal his fraudulent activities. |
| 4 | Violation of California Penal Code § 496 | The Karr Action Plaintiffs allege that the Defendants knowingly obtained funds belonging to the Karr Action Plaintiffs by fraud and deceit and concealed and/or aided in concealing or withholding funds belonging to the Karr Action Plaintiffs, despite having knowledge that such funds had been obtained by fraud and deceit. |
| 5 | Violation of California Corporate Securities Law | The Karr Action Plaintiffs allege that the Defendants offered for sale and sold and/or materially assisted or aided in the sale of shares of Catona and AGO to the Karr Action Plaintiffs by misleading statements and omissions of material fact in violation of California Corporations Code §§ 25401, 25501, 25403, 25504, and 25504.1. |

22.     On February 6, 2026, the Trustee, through counsel, sent a letter (the "Cease and Desist Letter") to the Karr Action Plaintiffs demanding that they cease and desist prosecution of the Karr Action. Adv. D.I. 4, Ex. E. In the Cease and Desist Letter, the Trustee asserted that all claims raised in the Complaint are property of the Debtors' estates and therefore subject to the automatic stay imposed by Bankruptcy Code section 362. *Id.*, Ex. E at 3-8.

23.     On February 20, 2026, the Karr Action Plaintiffs, through their undersigned counsel, sent a response letter (the "Cease and Desist Response") to clarify that the Complaint solely asserts direct claims against non-debtor third parties who are not protected by the automatic stay. Adv. D.I. 8, Ex. A.

## ARGUMENT[6]

**I.     The Automatic Stay Does Not Bar Prosecution of the Individual Claims Because They Are Not Estate Property.**

24.     It is axiomatic that the automatic stay protects only the property of the bankruptcy estate. It does not prohibit third parties from pursuing direct claims against non-debtors, even if a

---

[6]     Pursuant to Bankruptcy Rule 7008 and Local Rule 7012-1, the Karr Action Plaintiffs do not consent to the entry of final orders or judgments by the Court in connection with this adversary proceeding and do not concede that

bankruptcy trustee holds separate claims against the same the defendants. *See Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC* 490 B.R. 59, 66-67 (S.D.N.Y. 2013) ("independent third party claims against non-debtor parties are not subject to the automatic stay"). Nor does the Bankruptcy Code imbue a bankruptcy trustee with super-priority standing to obtain recovery from such defendants ahead of all other claimants. *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 21 (Bankr. E.D.N.Y. 1999) (the trustee has no "superseding right to recover [non-estate property] before all others.").

25.    The Trustee wrongly asserts that the Karr Action violates the automatic stay because the Individual Claims are property of the Debtors' estates. While the Trustee has not identified what specific claims she may bring against the Defendants, the facts suggest they would be claims for breach of fiduciary duty or negligence, for example. None of these claims are implicated in the Karr Action.

26.    Instead, each of the Individual Claims are direct, independent claims that arise from the Defendants' specific conduct toward the Karr Action Plaintiffs and seek recovery for resulting losses. As such, each constitutes a separate and direct cause of action that cannot be property of the Debtors' estates and could not be brought by the Trustee. *See In re Port Neches Fuels, LLC*, 660 B.R. 177, 193 (D. Del. Mar. 27, 2024); *accord In re Caribbean Petrol. Corp.,* 512 B.R. 774, 780 (Bankr. D. Del. 2014) (holding that where "[plaintiff]'s claims against the [defendant] are direct in nature. . . . Debtors did not own and therefore could not bring" them); *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("only the creditor himself can enforce… the creditor's own direct—not derivative—claim against the third party").

27.    This Court expressly has held that "property of the bankruptcy estate does not

---

this Court has subject matter jurisdiction to enjoin the Karr Action as to non-debtor Defendants*. See Gillman v. Continental Airlines* (*In re Continental Airlines*), 203 F.3d 203, 214 n. 12 (3d Cir. 2000) (noting that jurisdiction to enjoin third-party actions against non-debtors cannot be presumed).

include claims for damages caused to individual creditors or stockholders of the debtor." *In re Guiliano v. Schnabel* (*In re DSI Renal Holdings, LLC*), 574 B.R. 446, 479 (Bankr. D. Del. 2017) (quoting *Think3 Litig. Tr. v. Zuccarello* (*In re Think3, Inc.*), 529 B.R. 147, 187 (Bankr. W.D. Tex. 2015)). In contrast, claims are "property of the estate [only] if the claim existed at the commencement of the [bankruptcy] filing and the debtor could have asserted the claim on his own behalf under state law." *Artesanias Hacienda Real S.A. de C.V. v. North Mill Cap., LLC* (*In re Wilton Armetale, Inc.*), 968 F.3d 273, 280 (3d Cir. 2020) (quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5 (3d Cir. 2002)).

28.     A claim for an injury is personal to the creditor if it arises from a particularized injury specific to that creditor. *Emoral, Inc. v. Diacetyl* (*In re Emoral, Inc.*), 740 F.3d 875, 879 (3d Cir. 2014). To determine whether a claim is derivative or direct, courts in this district focus on the theory of recovery. *See Wilton Armetale*, 968 F.3d at 282 (a claim is personal where plaintiff suffers a "direct, particularized injury that can be directly traced to the defendant's conduct"); *see also Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211 (2d Cir. 2014) (explaining that where damages "are alleged to have been caused directly by non-debtor defendants . . . . that renders them 'particularized' and outside the Trustee's purview"). As explained below, the Karr Action Plaintiffs' theories of recovery are based on facts and harms specific to them—*i.e.*, what the Defendants said to and concealed from them.

### A. The Karr Action Plaintiffs Have Direct Fraud Claims Against the Defendants

29.     The Karr Action Plaintiffs' direct fraud claims arise from the Defendants' conduct in fraudulently inducing the Karr Action Plaintiffs to invest in or refrain from liquidating equity positions in Catona.

30.     Generally, "[t]he elements of a cause of action for fraud are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." *Orcilla v. Big Sur,*

*Inc.*, 244 Cal. App. 4th 982, 1007-08 (2016); *see also In re Takowsky*, Case No. 2:08-bk-14149-NB, Adv. No. 2:11-ap-02468-NB, 2012 Bankr. LEXIS 1921, at *22 (Bankr. C.D. Cal. Mar. 2, 2012) (similar). California statutes impose liability on "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk." *See* Cal. Code Civ. Proc. § 1709. This includes concealment when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970).

31.    Claims for aiding and abetting fraud, as here, stem from and are tied to the specific underlying claim for fraud. "Liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat. Ass'n.*, 127 Cal. App. 4th 1138, 1144 (2005). This requires "participation in a *specific primary wrong…*" *Id.* at 1152 (emphasis added).

32.    Courts have uniformly held that fraudulent inducement claims like those asserted in the Karr Action are direct, individualized claims. "A fraudulent inducement claim, if one exists, is a direct claim . . . Similarly, any civil conspiracy to commit fraud based on those same facts is also a direct claim." *In re Cornucopia Oil & Gas Co.*, No. 19-11782, 2024 Bankr. LEXIS 468, at *11 (Bankr. D. Del. Feb. 26, 2024); *see, e.g., In re CTE 1 LLC*, No. 19-30256 (VFP), 2023 WL 5257940, at *22 (Bankr. D.N.J. Aug. 11, 2023) (claims based on fraudulent statements to a particular creditor were not property of the estate); *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1056 (Del. Ch. 2015) (affirming that "tort claim[s] for fraud in connection with the purchase or sale of shares" are "[q]uintessential examples of personal claims"). California courts have found that shareholders plead direct claims when alleging wrongful inducement to

purchase or refrain from selling stock as a result of fraudulent or negligent misrepresentations upon which they actually relied. *Schuster v. Gardner*, 127 Cal. App. 4th 305 (2005).

33.    When a creditor alleges a direct injury based on fraud, such creditor has independent standing to pursue those direct claims. *Highland Cap. Mgmt. LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petrol., Inc.*), 522 F.3d 575, 586-87 (5th Cir. 2008) (holding bondholders' had standing to bring fraud claims because the claims were not "merely derivative" and such fraud caused them direct injury, despite the fact that the third-party defendant "might have inflicted direct injuries on both the bondholders and [debtors] during the course of dealings that form the backdrop of both sets of claims").

34.    The Trustee wrongly asserts that the Individual Claims are "general to all Chapter 7 creditors" and "clearly general claims that are estate property under section 541 of the Bankruptcy Code." Mot. ¶ 36; *see also id.* ¶¶ 35, 38-39; Verified Compl. ¶¶ 38-39. But this characterization is unsupported by the facts.

35.    The Complaint alleges that the Karr Action Plaintiffs engaged in specific, personal interactions with Defendant Sanberg, whose fraud was aided and abetted by the other Defendants, in which he made material misrepresentations—upon which the Karr Action Plaintiffs actually relied—to induce the Karr Action Plaintiffs to purchase stock, refrain from selling stock, or make loans. *See, e.g.,* Compl. ¶¶ 191-99. In addition, the Karr Action Plaintiffs' allegations demonstrate that the Defendants concealed material facts in connection with these false representations in violation of applicable state law.

36.    The Karr Action Plaintiffs justifiably relied on these various false representations and, as a result, suffered particularized damages. The Complaint includes numerous allegations of specific and direct conduct toward the Karr Action Plaintiffs, including:

- Defendant Sanberg directly solicited Plaintiffs Miller LLC, Miller, and Karr to purchase shares in Catona, including by speaking with Plaintiff Miller "multiple times" and directly providing Plaintiff

Miller with "fraudulent financial statements" over a period of years "from 2020 through 2025." Compl. ¶¶ 131, 135-36.

- Defendant Sanberg directly solicited Plaintiff ALS Trust, including through "multiple conversations with the trustee of the ALS Trust, Andrew L. Sadler," to purchase his own shares in Cantona by "falsely inform[ing] Mr. Sandler that Defendant Sanberg was selling a small portion of his founder's stock in Catona for the purpose of providing funding for his (Sandberg's) foundation." Compl. ¶¶ 138-39.

- Defendant Sanberg directly spoke to Mr. Skaff, a representative of Plaintiff Impact Fund II and induced Plaintiff Impact Fund II to make a loan of $2 million to Catona in reliance on his fraudulent misrepresentations, including that Catona "was a successful, legitimate business." Compl. ¶¶ 143-45.

- Defendants Sanberg, AlHusseini and Redmond directly solicited Plaintiff Praesumo, including through direct conversations that took place "on multiple occasions" and by providing Plaintiff Praesumo with a "false financial report" and "endors[ing] the financial report and the financial statements contained therein." Compl. ¶¶ 147-49.

- Defendant Sanberg directly solicited Plaintiff Sarin by personally "represent[ing] that Catona was a successful, legitimate business," and knowingly concealing his participation "in a fraudulent scheme." Compl. ¶¶ 153-54.

- Defendants Sanberg, AlHusseini and Redmond directly solicited and induced Plaintiff Chicago Atlantic "to make a $16 million loan to Sanberg, through a company owned by Sanberg, secured by shares in Catona" by fraudulently misrepresenting that Catona was "a successful, legitimate business" and actively endorsing and vouching for "grossly inflated, false Catona financial statements," including on a call to go "through the false financial" statements "page by page." Compl. ¶¶ 153-54.

37. Accordingly, the Individual Claims are the Karr Action Plaintiffs' "own separate and direct cause[s] of action" that "cannot belong to the estate." *Port Neches Fuels*, 660 B.R. at 193. Mere overlap between factual allegations that the Trustee may make and those made by the Karr Action Plaintiffs does not divest the Karr Action Plaintiffs of their Individual Claims relating to those shared facts. *See In re Reliance Acceptance Grp., Inc.*, 235 B.R. 548, 554-62 (D. Del. 1999) (reversing finding that shareholder claims were property of the estate where they were based on the same or similar facts and asserted against the same defendants).

38. The Trustee's assertion that the Individual Claims would also be available to any other creditor is equally unavailing. Unlike any claims potentially held by the Debtors' estates, fraudulent inducement is based solely on harm to individual investors, not to the Debtors or their creditors at large. The Karr Action Plaintiffs are the only parties with standing to bring the

1551.001 - #25000075v1                                              14

Individual Claims against the Defendants. The Complaint does not seek to enforce the rights or entitlements of the Debtors or to recover for losses stemming from harm caused to or by the Debtors.

39.     Rather, each of the Individual Claims arises from unlawful conduct taken by the Defendants to induce the Karr Action Plaintiffs to invest their own money in the fraudulent scheme for the financial benefit of the Defendants. Other creditors, such as trade creditors, cannot (and do not) claim to have been fraudulently induced by the Defendants to make investments in Catona by Sanberg, Ballmer or the other Defendants because they did not suffer these personalized injuries.

40.     The Trustee's reliance on *Greenpond* is misplaced. Mot. ¶ 9. In *Greenpond*, the court evaluated claims under the Minnesota test, which differs substantially from the applicable Delaware test prescribed by the Delaware Supreme Court in *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)). Under the Minnesota test, whether a claim is direct or derivative turns solely on the nature of the injury, not the theory of liability underlying the claim. *See Greenpond South, LLC v. Gen. Elec. Cap. Corp.*, 886 N.W.2d 649, 655 (Minn. App. 2016) ("Minnesota courts … have focused the inquiry to whether the complained-of injury was an injury to the shareholder directly, or to the corporation.") (internal citation and quotation omitted); *id.* at 656 ("In determining whether a claim is direct or derivative, we look to the injury itself, rather than the legal theory in which it is couched.").

41.     Conversely, the authoritative *Tooley* standard provides that this determination requires *two* questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley*, 845 A.2d at 1033. In *Tooley* (and its progeny), the court repeatedly considered the nature of the wrong alleged as well as the relief requested in the complaint. *See, e.g., id.* at 1036 ("Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested[.]"); *id.* at 1039 ("In this case

it cannot be concluded that the complaint alleges a derivative claim. There is no derivative claim asserting injury to the corporate entity. There is no relief that would go to the corporation."). The *Greenpond* analysis is incomplete under the applicable Delaware standard. It is not on point. Indeed, "[t]he proper analysis has been and should remain that … a court should look to the nature of the wrong and to whom relief should go." *Id.* at 1038. That is the law in Delaware.

42.    Likewise, the Trustee cites *Emoral* to support her argument that the Individual Claims are common to all creditors. Neither *Emoral* (or its predecessor *Foodtown, Inc.*) nor its progeny, including *Wilton Armetale*, are applicable here. Those cases involve questions of whether a plaintiff's theories of liability and/or equitable remedies like successor liability, veil-piercing, and alter ego, can bring a cause of action within the confines of a debtor's estate under Bankruptcy Code section 541(a)(1). The Karr Action does not implicate these types of claims, which bear no similarity to the Karr Action Plaintiffs' fraudulent inducement claims against non-debtor, third parties. Further, in *Emoral*, the plaintiffs sought relief against "a third party that [was] not alleged to have caused any direct injury to [them]" on a successor liability theory. 740 F.3d at 879. Unlike *Emoral*, the Karr Action Plaintiffs are pursuing direct claims for particularized injuries ***caused by the Defendants***—not generalized successor liability claims for harms caused by the Debtors.[7]

43.    The Complaint does not rely on any harms suffered by the Debtors, their inability to pay creditors, their insolvency, or general breaches of obligations owed to all creditors. To the contrary, the Complaint alleges facts showing the direct communications between Sanberg and the Karr Action Plaintiffs during which he solicited their investments, the misinformation that he propagandized to lure the Karr Action Plaintiffs to invest, and the manipulations of truth that the Defendants undertook to alter the narrative for their benefit at the expense of the Karr Action Plaintiffs. *See supra* ¶ 36. "A claim is personal when the creditor's injury can be directly traced to

---

[7]    For the same reasons, the Trustee's reliance on *Whittaker*, which also addressed successor liability claims, is misplaced.

wrongful conduct committed by the defendant, whether that be the debtor or a third party." *Protopapas v. Brenntag AG (In re Whittaker Clark & Daniels Inc)*, 152 F.4th 432, 448 (3d Cir. 2025) (internal quotations omitted). The Karr Action Plaintiffs' claims are based on their relationships with the Defendants and their conduct toward the Karr Action Plaintiffs—their particularized injuries are directly traceable to the Defendants' conduct.

44.    Reliance on *SemCrude* is also without merit. There, the Third Circuit evaluated claims under the Oklahoma test, which contains a different element than what is required under Delaware law and requires a shareholder to show that they "sustained any loss **in addition to** the loss sustained by the corporation." *In re SemCrude L.P.*, 796 F.3d 310, 316 (3d Cir. 2015) (quoting *Dobry v. Yukon Elec. Co.*, 290 P.2d 135, 138 (Okla. 1955) (emphasis added)). The Delaware standard, as announced in *Tooley*, contains no such requirement and specifically rejects any special injury concept. *See* 845 A.2d at 1039. Instead, *Tooley* requires only that: "a stockholder must demonstrate that…he or she can prevail **without showing an injury to the corporation**." 845 A.2d at 1039 (emphasis added)). "The proper analysis has been and should remain that . . . . a court should look to the nature of the wrong and to whom the relief should go." *Id.*

45.    The Trustee asserts that the Karr Action Plaintiffs fail to allege particularized injuries. The Trustee is wrong: the Complaint alleges, for example, that Defendant Sanberg personally misrepresented Catona's financial health to the Karr Action Plaintiffs, thereby fraudulently inducing them to invest funds or refrain from liquidating positions. Compl. ¶¶ 135, 168-99. Other creditors of the Debtors, such as trade or judgment creditors, did not suffer those harms. The mere fact that they may have suffered different harms does not somehow divest the Karr Action Plaintiffs of their own claims against the Defendants arising from the particularized harms that they suffered.

46.    Similar to the facts presented in *In re Caribbean Petrol. Corp.*, the Karr Action Plaintiffs' Individual Claims are "direct, particularized conduct and injury" and "are not

generalized and do not belong to the debtors' estate." 512 B.R. 774, 780 (Bankr. D. Del. 2014); *Id.* ("As *Emoral* makes clear, allegations based on 'direct, particularized conduct and injury' in contrast to a mere continuation theory are not generalized and do not belong to the debtors' estate.… The claims for injuries raised in the Tort Action are thus personal, not generalized."). Put differently, the Karr Action Plaintiffs are seeking to enforce their own rights, not the rights or entitlements of the Debtors or the Trustee. As a result, their claims cannot be property of the estate. *See id.*

47.    Finally, the Trustee's claim that recovery will inure to the benefit of all the Debtors' creditors is meritless for the same reasons. Because the liabilities alleged in the Complaint are owed only to the Karr Action Plaintiffs, it follows that only the Karr Action Plaintiffs have the right to recover for the resulting damages and losses. Recoveries on Individual Claims that belong solely to the Karr Action Plaintiffs cannot go into the Debtors' estates for distribution to all creditors because the claims do not belong to the estates in the first instance.

**B.  The Karr Action Plaintiffs Have Direct Claims for Violations of Penal Code § 496**

48.    The Karr Action Plaintiffs have direct claims against each of the Defendants for civil theft of their personal property in violation of the California Penal Code (the "Civil Theft Claims").

49.    Section 496 of the California Penal Code provides a "civil remedy for any person injured by the theft-related criminal offenses." *Siry Inv., L.P. v. Farkhondehpour*, 513 P.3d 166, 180 (Sup. Ct. Cal. 2022). Under California law, theft includes "defrauding any other person of money, labor or real or personal property." Cal. Penal Code § 484(a). "The elements of civil theft are: (1) property was stolen or obtained in a manner constituting theft; (2) the defendant knew the property was so stolen or obtained; and (3) the defendant received or had possession of the stolen property." *Wang v. Injective Labs Inc.*, No. 22-943, 2025 U.S. Dist. LEXIS 127061, at *27-28 (D. Del. June 26, 2025) (internal quotation marks and citation omitted); *see also Switzer v. Wood*, 35

Cal. App. 5th 116, 126 (2019) (same). "[T]heft by false pretenses may be accomplished with the owners' consent." *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-cv-00155-BAS(DHB), 2016 U.S. Dist. LEXIS 43942, at *22 (S.D. Cal. Mar. 30, 2016) (quoting *Carrillo-Jaime v. Holder*, 572 F.3d 747, 752 (9th Cir. 2009), *abrogated on other grounds by Descamps v. United States*, 133 S.Ct. 2276 (2013)) (internal quotation marks omitted).

50.     A plaintiff states a direct claim under Section 496 of the California Penal Code by "assert[ing] a right against the corporation which the shareholder possesses as an individual apart from the corporate entity." *Vivera Pharms. v. Dalrada Fin. Corp.*, 2022 Cal. Super. LEXIS 63358, at *7 (Cal. Sup. Ct. Oct. 4, 2022). In support of the Civil Theft Claims, the Complaint alleges that the "Defendants knowingly obtained by fraud and deceit funds belonging to [the] Karr Action Plaintiffs and aided in concealing or withholding funds belonging to [the] Karr Action Plaintiffs, knowing those funds had been obtained by fraud and deceit." Compl. ¶ 188. As such, the Karr Action Plaintiffs have alleged direct claims for civil theft that are neither property of the estate nor subject to the automatic stay.

51.     The Trustee asserts that Plaintiff's Civil Theft Claims are general in nature and therefore property of the Debtors' estates. This is erroneous. The Civil Theft Claims arise from the Defendants' liability to the Karr Action Plaintiffs for their actions in obtaining, concealing, and withholding the Karr Action Plaintiffs' funds. In contrast, derivative claims under Section 496 of the California Penal Code are those which assert individual harm that is merely incidental to the harm suffered by the corporation, such as lost profits or a decrease in the value of shares. *See Avikian v. WTC Financial Corp.*, 98 Cal. App. 4th 1108 (2002).

**C. The Karr Action Plaintiffs Have Direct Claims for the Defendants' Securities Law Violations**

52.     The Karr Action Plaintiffs hold direct claims against the Defendants for damages arising from the Defendants' securities law violations under sections 25401, 25501, 25403, 25504,

and 25504.1 of the California Corporations Code (the "Securities Claims"). California law provides a right of action to purchasers of securities for harm resulting from a defendant's misleading statements or omissions of material fact in violation of the statute. Claims seeking recovery on this basis are direct claims that can be brought only by the harmed securities owner. *See Wells Fargo Capital Fin., LLC v. Noble* (*In re R.E. Loans, LLC*), 519 B.R. 499, 517 (Bankr. N.D. Tex. 2014) (determining that claims under Cal. Corp. Code § 25401 were direct claims that could not be brought by the debtor).

53.    The Securities Claims do not stem from any alleged harm to the Debtors. Instead, they are premised solely on the Defendants' misleading statements and omissions of material fact in violation of the duties owed to the Karr Action Plaintiffs as prospective investors (not to the Debtors), and the harm the Karr Action Plaintiffs suffered as a result. *See I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, 2005 U.S. Dist. LEXIS 31041, at *18 (N.D. Cal. Nov. 3, 2005) (finding a direct claim where plaintiff did not seek damages for an injury to the company but instead sought recovery for a breach of the duty of disclosure owed to plaintiff as a prospective investor). Because the Securities Claims are causes of action that lie with the Karr Action Plaintiffs alone, they cannot be estate property or subject to the automatic stay.

**D. The Automatic Stay Does Not Shield Non-Debtor Third Parties or Property Outside the Debtors' Estates**

54.    The automatic stay does not enjoin litigation against non-debtor third parties for harm arising from their own misconduct. *See In re Cred Inc.*, No. 20-12836 (JTD), 2021 Bankr. LEXIS 518, at *7 (Bankr. D. Del. Feb. 26, 2021) ("By its words, Section 362(a) operates only to stay actions against the Debtors or the Debtors' property. Claims against non-debtor third parties … generally do not fall within the purview of Section 362(a)."); *Collier on Bankruptcy* ¶ 362.03[3] (16th ed. 2021) ("Litigation in which the debtor is not a party and that only collaterally affects the debtor is not stayed."). It is well settled that a corporate officer who participates in corporate fraud

"can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant." *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015). The Defendants named in the Karr Action are not officers or directors of a debtor-in-possession in the midst of a reorganization who might be distracted by the litigation, nor would judgment against non-debtor third parties affect the Debtors' estates or the bankruptcy process. *See Nat'l Brokers*, 663 B.R. at 672. Catona's bankruptcy case has converted to a liquidation under Chapter 7, and there is no reorganization effort to protect—and thus no unusual circumstance justifying a stay of litigation against third parties.

55.     Likewise, the automatic stay cannot and does not bar third parties from seeking recovery from non-estate assets held by non-debtors. Such property is beyond the scope of the automatic stay and lies beyond the Bankruptcy Court's jurisdiction. *See In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."). The Trustee cites no authority to support her exceptional request for an order preserving ***non-debtor property*** to ensure it remains available for her to recover in the event she eventually decides to pursue separate estate claims against the Defendants. Mot. ¶ 46 (seeking to protect assets "from the directors and officers or third parties"); *id.* at 38 (contending that the Karr Action threatens "limited resources belonging to the [Defendants]"). In fact, no such authority exists.

56.     Nor does the Trustee's contention that insurance proceeds may be depleted constitute cause to extend the automatic stay. While the D&O Policies[8] may be property of the Debtors' estates, the proceeds are not. *In re Allied Dig. Techs. Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) ("Generally, when insurance policies provide direct coverage to directors and

---

[8]     The Karr Action Plaintiffs intend to seek to obtain copies of the D&O Policies through discovery and reserve all rights related thereto.

officers, the ***proceeds of the insurance policy are not property of the bankruptcy estate*** because the proceeds are payable to the directors and officers not the estate.") (emphasis added). The Trustee has no greater claim to any proceeds of the D&O Policies than the Karr Action Plaintiffs. Thus, diminution of those proceeds does not represent "unusual circumstances" sufficient to extend the automatic stay. *See JNA-1 Corp. v. Uni-Marts, LLC* (*In re Uni-Marts, LLC*), 404 B.R. 767, 781 (Bankr. D. Del. 2009) (declining to extend the automatic stay to cover non-debtor manager despite indemnification obligations and potential diminution in insurance proceeds as the proceeds are not part of the bankruptcy estate).

57.     The Trustee's interest in maximizing recoveries for Catona's creditors, while laudable, does not preempt the Karr Action Plaintiffs' rights to pursue their own, direct claims against liable non-debtors. *First Cent. Fin. Corp.*, 238 B.R. at 21 ("[T]he Trustee has a duty … to marshal assets of the estate. Nonetheless, that duty does not freely translate into a superseding right to recover [non-estate property] before all others."); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) ("[W]here the nondebtor's liability rests upon his own breach of duty. . . . the automatic stay would clearly not extend to such nondebtor.").

**E.  The Karr Action Will Have No Preclusive Impact on Any Estate Claims**

58.     The Trustee argues that the Karr Action violates the automatic stay because it "directly implicates collateral estoppel." Mem. at 13. But the Trustee never explains how the automatic stay is violated, and the collateral estoppel argument does not withstand scrutiny.

59.     Collateral estoppel applies only where: (1) the issue decided in the previous action is identical to the one presented in the later action; (2) the previous action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was either a party to the previous action, or is in privity with a party to the previous action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous action. *Jones v. UPS*, 214 F.3d 402, 405 (3d Cir. 2000). Both claim and issue

preclusion require identity of parties—and privity is exceedingly narrow. *See Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008); *see also In re Island View Crossing II, L.P.*, 598 B.R. 552, 563 (Bankr. E.D. Pa. 2019) (applying *Taylor* in the bankruptcy context). "Privity requires the sharing of an identity or community of interest with adequate representation of that interest in the first suit, and circumstances such that the nonparty should reasonably have expected to be bound by the first suit. A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's virtual representative in the first action." *Gallegos v. Gallegos*, 2026 Cal. Super. LEXIS 5025, at *5 (Cal. Super. Ct. Jan. 8, 2026).

60.     Any risk of collateral estoppel is speculative. Collateral estoppel requires, among other things, that the issue be actually litigated and necessarily decided. No findings have been made (or will be made) in the Karr Action on any issue that would bind the Trustee. The Trustee has made no attempt to prove that the causes of action in the Karr Action are the same as the causes of action the Trustee would bring. They are not, and cannot be, the same. The Karr Action Plaintiffs' claims are uniquely based on their interactions with Sanberg and other Defendants.

61.     The Trustee and the Karr Action Plaintiffs also are not in privity. "Privity is the 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right'" such as an agency relationship. *Dukes v. E.M.S.A. HSA Stephanie Wood*, Civ. A. 21-857, 2022 U.S. Dist. LEXIS 26375, at *21 (W.D. Pa. Feb. 14, 2022) (quoting *Sec'y United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 95 (3d Cir. 2017)). "[P]rivity requires a prior legal or representative relationship between a party to the prior action and the nonparty against whom estoppel is asserted. Without such a relationship, there can be no estoppel." *Wilkins v. Invicta Watch Co. of Am., Inc.*, No. 25-9-KSM, 2025 U.S. Dist. LEXIS 132982, at *12 (E.D. Pa. July 14, 2025) (quoting N*ationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312 (3d Cir. 2009)). "Parties in privity include those who are successors to a property interest, those who control an action although not

formal parties to it, those whose interests are represented by a party to the action, and possibly co-parties to a prior action." *Eugenia VI Venture Holdings., Ltd.. v. Maplewood Mgmt. LP (In re AMC Invs., LLC)*, 656 B.R. 95, 111 (D. Del. 2024) (internal quotations omitted). Here, there is no reasonable argument—and the Trustee does not attempt to make one—that the Trustee and the Karr Action Plaintiffs are in privity. The Trustee has not agreed to be bound by the outcome of the Karr Action (quite the opposite). The Karr Action Plaintiffs are not agents of the Trustee or acting in any representative capacity, nor does the Trustee control the Karr Action Plaintiffs' litigation strategy. There is simply no colorable argument that the Trustee would be bound by the outcome of the Karr Action.

## II.    The Trustee Has Failed to Identify Any Legal or Factual Basis to Justify the Extraordinary Imposition of a Preliminary Injunction

62.    The Trustee seeks the imposition of a preliminary injunction under Bankruptcy Code sections 105(a) and 362(a) or, in the alternative Bankruptcy Rule 7065, but fails to make the requisite showing to justify such an injunction.

63.    The Third Circuit has held that "[a] preliminary injunction is an ***extraordinary*** remedy granted in ***limited*** circumstances." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (internal citation omitted) (emphasis added). To determine whether a preliminary injunction is appropriate, the court "must be convinced that the following factors favor granting preliminary relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). The burden of proof falls entirely on the movant seeking a preliminary injunction. *See e.g. Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the

movant, by a clear showing, carries the burden of persuasion."); *see also Novartis*, 290 F.3d at 586; *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (stating that moving party bears the burden). The Trustee has not and cannot articulate any factual or legal basis sufficient to permit this Court to grant her the extraordinary relief of issuing a preliminary injunction to halt the Karr Action.

64.   In determining whether to issue a preliminary injunction, the Third Circuit has explained that:

> a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Reilly v. City of Harrisburg*, 858 F.3d at 179 (internal citations and footnotes omitted). For the reasons that follow, all four factors balance in favor of denying the Motion.

**A.  The Trustee Fails to Establish a Likelihood of Success on the Merits**

65.   First, the Trustee has not articulated a reasonable probability of success on the merits. To establish a likelihood of success on the merits, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Punnett v. Carter,* 621 F.2d 578, 583 (3d Cir. 1980) (quoting *Oburn v. Sharp,* 521 F.2d 142, 148 (3d Cir. 1975)). The Trustee has not made any showing that it has a reasonable probability of prevailing on the merits.

66.   For the reasons explained above, the Karr Action is not barred by the automatic stay because the Individual Claims are not estate property. Instead, they are personal, direct claims held by the Karr Action Plaintiffs against non-debtor third parties who, with the exception of

Inherent which received only estate releases, have not received releases and fall outside the scope of the Court's jurisdiction.

67.     *W.R. Grace & Co.*, on which the Trustee relies, employed a modified Ninth Circuit test that is inapplicable here, considering the likelihood of a successful reorganization instead of the reasonable likelihood of success on the merits. *See W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17, 33 (Bankr. D. Del. 2008) ("the court must apply the 'usual preliminary injunction standard," and "consider whether the debtor has a reasonable likelihood of a successful reorganization…'"); *In re Excel Innovs., Inc.*, 502 F.3d 1086, 1096 (9th Cir. 2007). Even if the Ninth Circuit's test were applicable (it is not), the likelihood of a reorganization in this proceeding is nonexistent—the Debtors' cases were converted to cases under chapter 7 for liquidation.

**B. The Trustee Fails to Establish That Prosecution of the Karr Action Will Cause Irreparable Harm**

68.     Second, the Trustee also has failed to meet her burden of demonstrating that the Debtors' estates will suffer ***immediate irreparable*** harm if the preliminary injunction is denied. To establish irreparable harm, a plaintiff must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction ***must be the only way*** of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). Further, "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). "We have long held that an injury measured in solely **monetary** terms cannot constitute **irreparable harm**." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) (emphasis in original). The Third Circuit has explained that:

> Establishing a risk of irreparable harm is not enough. A ***plaintiff has the burden of proving a 'clear showing of immediate irreparable injury*.*'** The 'requisite feared injury or harm must be irreparable –

> not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'

*Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91-92 (3d Cir. 1992) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)) (emphasis added).

69.     The only "harms" the Trustee has alleged in support of her request for a preliminary injunction are her allegation that a favorable judgment in the Karr Action against the Defendants puts their assets at risk of depletion to the detriment of the Debtors' other creditors and the Defendants' may have indemnification claims. However, as previously explained, the Trustee has no enhanced right or entitlement to a recovery from third parties, and D&O insurance proceeds are *not* property of the estates. *See First Cent. Fin. Corp.*, 238 at 17. As a result, neither alleged "harm" can justify the extraordinary remedy of imposing a preliminary injunction to halt the Karr Action. The Trustee, the Debtors' estates and their creditors cannot be harmed by the depletion of something they do not own or in which they do not have a property interest.

70.     Indemnification obligations, even if they potentially exist, do not constitute irreparable harm. The existence of indemnification obligations is common in corporate structures and does not, standing alone, warrant extension of the automatic stay. *In re Uni-Marts*, 404 B.R. at 781. The mere possibility of indemnification is insufficient; otherwise, the stay would be extended to virtually every officer and director of a corporate debtor. *See In re Parlement Techs., Inc.*, 661 B.R. 722 (Bankr. D. Del. 2024) (denying preliminary injunction motion and rejecting possible indemnity claims as a sufficient basis for a stay). Importantly, the proceeds of the Debtors' D&O policies may not be property of the estate. *See In re Uni-Marts*, 404 B.R. at 781. The Trustee has not produced the policies, demonstrated that indemnification claims are certain, or demonstrated that the proceeds are part of the bankruptcy estate.

71.     Thus, the Trustee has failed to meet the gateway factors of demonstrating that she can win on the merits and that she is more likely than not to suffer immediate irreparable harm. As

such, the Motion must be denied.

### C.   The Balance of Equities Weighs Against Enjoining the Karr Action

72.   The final two factors, harm to others which will occur if the preliminary injunction is granted and whether the injunction would serve the public interest, are only considered by the Court if the "threshold" of the first two "gateway factors are met." *Reilly v. City of Harrisburg*, 858 F.3d at 179. While the Karr Action Plaintiffs assert that the Trustee cannot meet this threshold, the final two factors weigh in their favor as well. Unlike the Trustee, the Karr Action Plaintiffs will be harmed by the issuance of a preliminary injunction halting the Karr Action and the delay in any subsequent recovery. While the Trustee takes inconsistent positions asserting on the one hand that the Karr Action Plaintiffs "are not creditors" of the estates, Mem. at 2, and on the other hand they will suffer no harm as they will be treated in accordance with the "centralized bankruptcy process", Mem. at 18, the Karr Action Plaintiffs currently are not participating in the "centralized bankruptcy process" and will not benefit from the Trustee's future litigation and any potential recovery with respect to the claims at issue. As explained above, the claims the Trustee seeks to enjoin are not estate property and, thus, will not generate any recovery for any estate creditors. Further, the prosecution of the Karr Action Plaintiffs' claims does not prohibit the Trustee from fulfilling her statutory duties and contemporaneously initiating and prosecuting those claims that are estate property.

### D.   The Public Interest Favors Denying the Injunction

73.   With respect to the last factor, in the context of bankruptcy proceedings, the public interest element focuses on promoting the debtor's successful reorganization. *See Broadstripe, LLC v. Nat'l Cable Television Coop., Inc.* (*In re Broadstripe, LLC*), 402 B.R. 646, 659 (Bankr. D. Del. 2009) (explaining in the context of the public interest factor that "[i]n the face of the potential for significant injury to the Debtors' business value and reorganization efforts and the potential loss of service to its customers, the public interest favors granting the requested injunctive relief

to enable the Debtors to attempt to reorganize in chapter 11."); *Rickel Home Ctrs., Inc. v. Baffa* (*In re Rickel Home Ctrs., Inc.*)*,* 199 B.R. 498, 501 (Bankr. D. Del. 1996) ("[T]here is a strong public interest in promoting a successful Chapter 11 reorganization."); *LTV Corp. v. Back* (*In re Chateaugay Corp.*)*,* 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996) ("Public policy, as evidenced by chapter 11 of the Bankruptcy Code, strongly favors the reorganization and rehabilitation of troubled companies and the concomitant preservation of jobs and going concern values."), *aff'd,* 213 B.R. 633 (S.D.N.Y. 1997).

74.    Here, the Trustee lacks any basis to argue that a preliminary injunction halting the Karr Action promotes a successful reorganization that would be in the public's interest. It is beyond dispute that the Debtors were unable to reorganize and were forced to liquidate. The Trustee's argument that the Karr Action Plaintiffs seek to circumvent the Bankruptcy Code's priority scheme is equally unavailing. As stated, the Individual Claims are not estate property and seek recovery only from non-debtor third parties. In contrast, the public interest strongly favors allowing victims of fraud to pursue their direct claims against non-debtors. The law disfavors fraud, and courts should not use their equitable powers to insulate alleged wrongdoers from accountability.

75.    In sum, the Trustee has failed to meet her burden to show that the extraordinary relief she requests – a preliminary injunction – should be granted. All of the applicable factors disfavor granting the Motion.

## RESERVATION OF RIGHTS

76.    The Karr Action Plaintiffs expressly reserve and do not waive, any and all rights, claims, causes of action, rights of set off, remedies, and defenses, including the right to file proofs of claim,[9] in any and all courts, under law or in equity, the Bankruptcy Code, applicable law or

---

[9]    Upon information and belief none of the Karr Action Plaintiffs were served with notice of the deadline to file proofs of claim. *See Notice of Chapter 7 Bankruptcy Case – Proof of Claim Deadline Set* [D.I. 357] (omitting Karr Action Plaintiffs from service list). The Karr Action Plaintiffs reserve all rights with respect thereto.

otherwise against the Debtors' estates, the Trustee, any successor in interest to the Debtors' estates, the Defendants, and any and all third-parties, including, but not limited to, the right to seek recovery from any applicable insurance policies. Additionally, the Karr Action Plaintiffs reserve all rights to supplement this Objection and to submit further evidence and argument in any subsequent submission or at any hearing with respect to the Motion.

## CONCLUSION

77.    For all of the foregoing reasons, the Karr Action Plaintiffs request that the Court sustain the Objection, deny the Motion, and grant such other and further relief as the Court deems just and proper.

Dated: April 28, 2026
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Kimberly A. Brown (No. 5138)
Colin R. Robinson (No. 5524)
Elizabeth A. Rogers (No. 7335)
George A. Williams II (No. 6964)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: brown@lrclaw.com
      robinson@lrclaw.com
      erogers@lrclaw.com
      williams@lrclaw.com

- and -

**MILLER BARONDESS LLP**
Louis R. Miller (admitted *pro hac vice*)
Colin H. Rolfs (admitted *pro hac vice*)
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Email: smiller@millerbarondess.com
      crolfs@millerbarondess.com

*Counsel to the Karr Action Plaintiffs*