## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CTN HOLDINGS, Inc., <u>et al.</u>, [1]<br><br>      Debtors. | Chapter 7<br><br>Case No. 25-10603 (TMH) |
| JAMI B. NIMEROFF, as chapter 7 trustee for CTN Holdings, Inc., et al.,<br><br>      Plaintiff,<br>v.<br><br>DONALD R. KARR; MILLER FAMILY LEGACY LLC; LOUIS R. MILLER; ALS REVOCABLE TRUST; EMERGING IMPACT FUND II, LP; PRAESUMO HOLDINGS, LLC; RAVI SARIN; PAUL SOROS 2010 FAMILY TRUST A; CHICAGO ATLANTIC FINANCE LLC; CHICAGO ATLANTIC CREDIT COMPANY, LLC; and CHICAGO ATLANTIC OPPORTUNITY FINANCE LLC,<br>      Defendants. | Adv. Pro. No. 26-50233 (TMH) |

## MEMORANDUM OPINION

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of the Debtors' federal tax identification number, are: CTN Holdings, Inc. (9122), CTN SPV Holdings, LLC (8689), Make Earth Green Again, LLC (4441), Aspiration QFZ, LLC (1532), Aspiration Fund Adviser, LLC (4214), Catona Climate Solutions, LLC (3375), and Zero Carbon Holdings, LLC (1679), The mailing address for the Debtors is 548 Market Street, PMB 72015, San Francisco, CA 94104-5401.

## I.   BACKGROUND

On March 30, 2025, CTN Holdings, Inc. ("Catona") filed a petition under chapter 11. The Court converted the cases to chapter 7 on August 7, 2025, and the United States Trustee appointed Jami B. Nimeroff as the chapter 7 trustee (the "Trustee"). On July 9, 2025, Donald R. Karr; Miller Family Legacy LLC; Louis R. Miller; ALS Revocable Trust; Emerging Impact Fund II, LP; Praesumo Holdings, LLC; Ravi Sarin; Paul Soros 2010 Family Trust A; Chicago Atlantic Finance LLC; Chicago Atlantic Credit Company, LLC; and Chicago Atlantic Opportunity Finance LLC (collectively, the "Karr Action Plaintiffs") commenced an action in the Superior Court of the State of California, County of Los Angeles, Central District (the "Karr Action") against Sanberg; AGO Special Situations, LP; Steven Ballmer; Ballmer Giving LLC; Ibrahim Alhusseini; Nate Redmond; Alpha Edison Management Company, LLC; David Aronoff; Baker Hostetler LLP; KPMG LLP; Alvarez & Associates, Inc.; BDO USA, P.C.; Michael Ellis; Inherent Group, LP; and Does 1 through 30 (collectively, the "Karr Action Defendants"). The Karr Action Plaintiffs subsequently filed an amended complaint in the action on November 3, 2025.

The general thrust of the allegations in the Karr Action is that the Karr Action Defendants either fraudulently induced the Karr Action Plaintiffs to buy shares in Catona, hold shares in Catona, or, in the case of Chicago Atlantic Finance LLC, Chicago Atlantic Credit Company, LLC, and Chicago Atlantic Opportunity Finance LLC (collectively, "Chicago Atlantic"), make a loan secured by shares in Catona or aided and abetted other Karr Action Defendants in doing so. The

complaint includes allegations that at least one Karr Action Defendant made direct contact with each Karr Action Plaintiff, inducing their investment.[2]

In Count 1 of the complaint in the Karr Action, the Karr Action Plaintiffs allege that Sanberg engaged in a fraudulent scheme to induce them to buy shares of Catona and to continue to hold those shares rather than to take action to minimize their investment losses. In Count 2, Chicago Atlantic and Praesumo allege that Sanberg, Redmond, and Alhusseini made false and misleading statements and omissions to induce Chicago Atlantic to make a loan to Sanberg and Praesumo to invest in Catona. Count 3 alleges that the Karr Action Defendants other than Sanberg, aided and abetted in the fraudulent scheme alleged in Counts 1 and 2. Count 4 alleges a violation of California Penal Code section 496 against the Karr Action Defendants for obtaining funds through fraud and deceit and further concealing or withholding those funds. Count 5 alleges a violation of California Corporate Securities Law by the Defendants for selling or assisting the sale of shares by misleading statements and omissions of material fact.

The Trustee filed her complaint seeking to enjoin the Karr Action on April 10, 2026. Along with the complaint, the Trustee filed a motion seeking a temporary restraining order and preliminary injunction.[3] The parties agreed to a temporary restraining order and the Court entered an order setting a schedule for a hearing on

---

[2] First Am. Compl., <u>Karr v. Sanberg</u>, Ca. No. 25STCV20376 (Cal. Super. Ct.), KAP-2, ¶¶ 131–32,135–36, 138–40, 143–45, 147–50, 153–54, 157–58, 161–65 (the "Karr Action Compl.") [Adv. D.I. 17-1].

[3] Mot. for Entry of TRO and Prelim. Inj. [Adv. D.I. 3].

a preliminary injunction and restraining the Karr Action Plaintiffs from the prosecution of the Karr Action until the determination of the motion.[4] The Court held a hearing on May 22, 2026.[5]

## II.   JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b). The determination whether the claims raised in the Karr Action are property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## III.   ANALYSIS

Although the relief requested is a preliminary injunction, the Trustee's principal position at oral argument was that the property-of-the-estate question is dispositive and the injunction question secondary.[6] Counts I and II of the complaint each raise that question. The two regimes are distinct. If any claim asserted in the Karr Action is property of the estate, section 362(a)(3) stays its prosecution automatically as an exercise of control over estate property, and no injunction is required. If a claim is not estate property, its prosecution may be enjoined under section 105(a). That relief requires the Trustee to satisfy the preliminary-injunction standard, including a showing of irreparable harm.

The Trustee fails on both tracks. As explained below, every claim in the Karr Action is personal to the Karr Action Plaintiffs and is therefore not property of the estate that is subject to the automatic stay. That conclusion defeats the Trustee's

---

[4] TRO and Briefing Schedule for Trustee's Mot. for a Prelim. Inj. [Adv. D.I. 15].
[5] Tr. of Hr'g 151:10–12.
[6] Tr. of Hr'g 117:9–17.

principal theory. Even if a claim was estate property, the Trustee would still fail on the section 105 track because she put on a limited evidentiary presentation that does not establish irreparable harm.

To succeed on a motion for a preliminary injunction, the moving party must show a likelihood of success on the merits and that it will experience irreparable harm, with no adequate remedy at law, if the relief is not granted.[7] Once the court determines that these factors are met, it considers them along with the possibility of harm to the nonmovant and the public interest to determine whether "all four factors, taken together, balance in favor of granting the requested preliminary relief."[8] As the movant, the Trustee bears the burden of showing that she has a "significantly better than negligible but not necessarily more likely than not" ability to win on the merits and that she is "more likely than not to suffer irreparable harm in the absence of preliminary relief" under this test.[9]

### A. Likelihood of Success on the Merits

The filing of a bankruptcy petition acts as an automatic stay as to "any act to obtain possession of property of the estate or to exercise control over property of the estate."[10] If any claim brought by the Karr Action Plaintiffs is property of the estate, only the Trustee may bring it.[11]

---

[7] Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017).
[8] Id. at 176, 179.
[9] Id.
[10] 11 U.S.C. § 362(a)(3).
[11] See In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014).

The Third Circuit employs a two-prong test to determine whether a claim is property of the estate: First, it must have existed at the commencement of the bankruptcy case, and second, it must be a general claim and not personal to any creditor.[12] The parties do not dispute that the claims existed at the commencement of the bankruptcy case. All the events alleged in the Karr Action Complaint occurred prepetition. The parties' dispute is about whether the claims are general or personal.

General claims are those that can be brought on behalf of the debtor corporation for an injury done to it, meaning they are derivative in nature, while personal claims are for particularized injuries that only the creditor may bring, meaning they are direct in nature.[13] "Whether a claim is derivative or direct is a question of state law,"[14] and the parties agree that Delaware supplies the relevant law here.

The parties primarily discuss Tooley in their discussion of Delaware law. In that case, the Delaware Supreme Court described the analysis as being comprised of two questions: who suffered the harm and who would benefit from recovery.[15] However, in NAF Holdings, it clarified that before applying the Tooley analysis,

---

[12] Id.; Whittaker Clark & Daniels Inc v. Brenntag AG (In re Whittaker Clark & Daniels Inc), 176 F.4th 241, 262–65 (3d Cir. 2026) (holding that, despite language indicating otherwise in Emoral, there is no additional requirement that the action must have been available to the debtor under non-bankruptcy law).

[13] Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir. 1994); Verizon Commc'ns Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. N18C-08-086 EMD CCLD, 2021 WL 710816, at *10 (Del. Super. Ct. Feb. 23, 2021).

[14] In re SemCrude L.P., 796 F.3d 310, 316 (3d Cir. 2015) (quotation modified).

[15] Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004).

courts must first ask a threshold question of whether the claim belongs to the claimant personally or to the corporation.[16] The court explained that <u>Tooley</u> was intended to determine whether claims for breaches of fiduciary duty were direct or derivative, but was not "intended to be a general statement requiring all claims, whether based on a tort, contract, or statutory cause of action, . . . to be brought derivatively whenever the corporation of which the plaintiff is a stockholder suffered the alleged harm."[17] Then, in <u>Citigroup</u>, the court reaffirmed that explanation of <u>Tooley</u>'s "limited scope."[18]

<u>Citigroup</u> is particularly instructive here. In that case, the United States Court of Appeals for the Second Circuit certified to the Supreme Court of the State of Delaware the question of whether "the claims of a plaintiff against a corporate defendant alleging damages based on the plaintiff's continuing to hold the corporation's stock in reliance on the defendant's misstatements as the stock diminished in value [were] properly brought as direct or derivative claims."[19] The Supreme Court answered that those claims were direct because "under the laws governing those claims . . . the claims belong to the stockholder who allegedly relied on the corporation's misstatements to her detriment."[20] The court distinguished

---

[16] NAF Holdings, LLC v. Li & Fung (Trading) Ltd., 118 A.3d 175, 180 (Del. 2015).
[17] <u>Id.</u> at 179–80.
[18] <u>Citigroup Inc. v. AHW Inv. P'ship</u>, 140 A.3d 1125, 1139 (Del. 2016).
[19] <u>Id.</u> at 1126.
[20] <u>Id.</u>

these claims from those based on selling or purchasing stocks, "which are direct claims that are personal to the holder."[21]

Here, all the counts allege that the defendants' efforts caused the plaintiffs to purchase, hold, or make a loan based on a security investment in Catona stocks. These categories can be analyzed under the Citigroup framework as they appear in the counts in the Karr Action. This framework relies on an analysis of the nature of the claims under the relevant state law. [22] The Karr Action Plaintiffs have brought their claims under California law.

Under Citigroup, claims that seek recovery for the purchase or the receipt of shares "are personal to the holder."[23] Each count includes claims seeking recovery of funds used to purchase shares and fall under this category. Counts 4 and 5 include only these types of claims, other than where the claims are brought by Chicago Atlantic. Count 4 seeks such recovery under a section of the California Penal Code that allows a civil recovery when items have been obtained by theft.[24] This claim alleges that Karr Action Plaintiffs' funds were essentially stolen through the Karr Action Defendants' fraudulent actions. It does not allege injury through a diminution of value or seek recovery on any pro-rata basis. In Count 5, the Karr

---

[21] Id. at 1140.

[22] Id. ("Delaware law cannot convert a direct claim that another state's law has granted to securities holders by deciding that it actually belongs to the corporation that the securities holder is suing.").

[23] Id.

[24] Karr Action Compl. ¶¶ 187–89; see generally Siry Inv., L.P. v. Farkhondehpour, 513 P.3d 166, 183–84 (Cal. 2022) (describing how California Penal Code section 496 applies to allegations of fraud).

Action Plaintiffs allege violations of California securities law and seek rescission of the securities transactions through which they acquired Catona shares or security interests, compensatory damages and other forms of recovery.[25] This also alleges direct harm based on actions directed towards the Karr Action Plaintiffs when they bought the shares, and does not allege any injury through diminution of value. To the degree these counts relate to the purchase of shares, they are personal claims.

The allegations from Chicago Atlantic that the Karr Action Defendants induced it to make a loan secured by an interest in stocks occupy a distinct position from the other claims. According to testimony by Anthony Cappell, a co-founder and partner at Chicago Atlantic, Chicago Atlantic made a loan to a different company related to Sanberg, Chicago Carbon Holdings, LLC, with shares of Catona serving as collateral based on representations made directly to it by Sanberg, Redmond, and Alhusseini.[26] Chicago Atlantic did not lend to Catona or own any shares in Catona. Instead, the purported liability stems from the direct personal representations that informed Chicago Atlantic's decision to lend funds. This is meaningfully different from an equity investor suffering pro rata loss from a general degradation in enterprise value. Chicago Atlantic is only seeking to recover the unpaid loan amount.[27]

There is another, more practical reason why Chicago Atlantic's claims are not derivative. "[U]nder Delaware law an equitable or beneficial owner is permitted to

---

[25] Karr Action Compl. ¶¶ 190–99.
[26] Tr. of Hr'g 71:13–14, 72:2–17, 74:9–18, 78:7–21, 92:8–18, 93:9–16.
[27] Id. at 83:10–11.

maintain a derivative action."[28] Chicago Atlantic has a security interest in Catona shares, but does not own any.[29] The claims brought by Chicago Atlantic are personal.

Counts 1 and 2 include allegations that the Karr Plaintiffs were injured by continuing to hold Catona shares because they relied on misstatements or omissions by certain Karr Defendants.[30] These counts require each plaintiff to show that they justifiably relied on the defendants' statements.[31] Under California law, such claims are personal claims.[32] Count 3 alleges that certain of the Karr Action Defendants aided and abetted the frauds alleged in Counts 1 and 2. Because aiding and abetting claims require showing that the underlying tort occurred, this count also requires justifiable reliance and is personal to the holder.[33] Additionally, as in Citigroup, the harm alleged in these counts "is not shared equally by all stockholders because not all stockholders will have relied on the . . . misrepresentations and abandoned plans to sell their shares."[34]

This result is in accord with Third Circuit law on this issue. In Whittaker Clark & Daniels, the Third Circuit laid out a test similar to that discussed by the Delaware Supreme Court in NAF Holdings in noting that personal claims are those

---

[28] Murdock v. Follansbee Steel Corp., 213 F.2d 570, 572 (3d Cir. 1954).
[29] Revlon, Inc. v. Pantry Pride, Inc., 621 F. Supp. 804, 817 (D. Del. 1985).
[30] See Karr Action Compl.¶¶ 168–81.
[31] Small v. Fritz Companies, Inc., 65 P.3d 1255, 1258 (Cal. 2003).
[32] Id. at 1266.
[33] See Nasrawi v. Buck Consultants LLC, 179 Cal. Rptr. 3d 813, 824 (Dist. Ct. App. 2014) (describing the elements of a claim for aiding and abetting a tort).
[34] Citigroup, 140 A.3d at 1140 n.74.

with a theory of liability "based on a particularized injury directly traceable to the conduct of the defendant," while general claims are those with a theory of liability "based on an injury to the debtor corporation that resulted in secondary harm to all creditors."[35] This Court used the same test in <u>Aliera</u>, and focused its analysis on whether the harm was directed to the estate or to the creditors.[36] Similarly, Judge Goldblatt recently utilized the <u>Whittaker Clark & Daniels</u> test and found claims to be personal where, to succeed on their claim, each plaintiff would have to show that they justifiably relied on statements made by each defendant.[37]

      <u>SemCrude</u>, upon which the Trustee relies, does not demand a different result. In that case, the Third Circuit determined that under controlling Oklahoma law, a party must allege an additional loss to that of the corporation for their claim to be considered personal.[38] Then, based on a close analysis of Oklahoma case law, the court found that the claims in question were derivative because the plaintiffs were unable to allege that they experienced any additional loss not suffered by the company or other equity holders.[39] Delaware law does not contain the same "additional loss" requirement, so <u>SemCrude</u> is inapposite.

---

[35] Whittaker Clark & Daniels, 176 F.4th at 269.

[36] <u>In re Aliera Companies, Inc.</u>, No. 21-11001 (TMH), 2025 WL 2091090, at *6 (Bankr. D. Del. July 24, 2025).

[37] <u>Joann Inc. v. Advantus Corp.</u> (<u>In re Joann Inc.</u>), No. 25-10068 (CTG), 2026 WL 1699191, at *10 (Bankr. D. Del. June 11, 2026).

[38] <u>SemCrude</u>, 796 F.3d at 316.

[39] <u>Id.</u> at 319.

### B. Irreparable Harm

The Trustee identifies two bases for irreparable harm. First, she argues that any recovery by the Karr Action Plaintiffs from the same pool of defendants will deplete assets otherwise available for all creditors, primarily in the form of insurance policies (the "D&O Policies").[40] Second, she argues that adverse factual findings or legal rulings in the California proceeding could have a preclusive effect on the Trustee's own future litigation.[41] The Trustee also contends that the D&O Policies have been substantially depleted, with approximately $800,000 remaining.[42]

However, the Trustee did not introduce any policies into evidence and likewise furnished no evidence to support her contention that the policies are substantially depleted. Counsel for the Trustee acknowledged this issue at oral argument, and all but conceded it, commenting that while the policies are not in evidence, "that is really not the main point here."[43] Because the question of irreparable harm is a fact-intensive one, the Trustee's election not to introduce evidence in support of its irreparable harm argument dooms it to failure.

Under Delaware authority, the threshold question of whether similar insurance proceeds are property of the estate is entirely fact-specific and turns on the structure of the particular policy.[44] Allied Digital establishes three distinct

---

[40] Mem. of Law in Supp. of Mot. for TRO and Prelim. Inj. 18 [Adv. D.I. 3-1].
[41] Id.
[42] Id.
[43] Tr. of Hr'g 117:10.
[44] In re Allied Digital Techs., Corp., 306 B.R. 505, 509 (Bankr. D. Del. 2004).

categories: (1) proceeds are not estate property where the policy provides direct coverage only to directors and officers; (2) proceeds are estate property where coverage extends to both the directors and officers and the debtor and depletion would adversely affect other estate assets; and (3) proceeds are not estate property where indemnification coverage to the debtor is hypothetical or has not yet occurred.[45] Without the policies in evidence, the Court cannot analyze Catona's D&O coverage. The Trustee bears the burden of proof for irreparable harm and cannot satisfy that burden on the theory of depletion of estate assets without first establishing that these policies or their proceeds are property of the estate.

There is a further compounding problem. Allied Digital also establishes that even where a policy provides mixed coverage, the estate has a property interest only to the extent that depletion "would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution."[46] That analysis requires knowing what the policies actually provide and whether the debtor entity has any active or viable claim under them. There is no evidence going to this issue.

Given the absence of evidence that the policies at issue belong to the estate or would deplete the estate, the Court finds that the Trustee has not sustained her burden of showing irreparable harm based on the depletion of the policies.

---

[45] Id. at 510–11.
[46] Id. at 512.

13

The Trustee, however, advances a second theory of irreparable harm, namely that if the Karr Action proceeds, the Trustee could be bound by any findings of the California court under a theory of collateral estoppel.

Collateral estoppel, also referred to as issue preclusion, "provides that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigating the issue in a suit on a different cause of action involving a party to the first case.'"[47] This doctrine "applies only (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."[48] Privity "'require[s] the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit."[49] There is no evidence that the Trustee is in privity with the Karr Action Plaintiffs, and she has not advanced an argument that has shown such privity. Moreover, at oral argument, the Trustee seemed to abandon this theory. When the Court questioned whether collateral estoppel would apply when the

---

[47] Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

[48] Grande v. Eisenhower Med. Ctr., 512 P.3d 73, 79 (Cal. 2022) (citation modified). Courts apply the collateral estoppel requirements of the court that heard the first case. See Horsehead Indus., 258 F.3d at 140.

[49] DKN Holdings LLC v. Faerber, 352 P.3d 378, 387–88 (Cal. 2015) (quoting Clemmer v. Hartford Ins. Co., 587 P.2d 1098, 1102 (Cal.1978).

Trustee is not a party to the Karr Action, counsel for the Trustee responded that he was "[n]ot sure."[50]

In W.R. Grace, the Third Circuit found that the bankruptcy court did not abuse its discretion in refusing to clarify or modify an injunction where the plaintiffs argued that the Trustee would be protected from collateral estoppel because of a lack of privity.[51] However, the factual circumstances in that case were different than those here. First, that case came to the court on a motion to interpret, alter, or reconsider an injunction, not on an appeal from the injunction, so the plaintiff, not the trustee, bore the burden of proof.[52] The court declined to apply the theory that the trustee would be protected from collateral estoppel because it was "more supposition than certainty at this juncture."[53] However, here, the burden is on the Trustee to show the potential effect, not on the Karr Action Plaintiffs to show the lack of impact. Additionally, the standard used by the court to test the potential harm there was whether the litigation "could interfere with the reorganization of the debtor."[54]

Apart from possible issue preclusion, the Trustee argues that the Karr Litigation could expose her to record taint that would burden the estate in pursuing its own causes of action. While record taint is not clearly defined, the Court understands it to be referring to the concept that testimony and discovery from the

---

[50] See Tr. of Hr'g 117:23–118:1.
[51] In re W.R. Grace & Co., 115 F. App'x 565, 569–70 (3d Cir. 2004).
[52] Id. at 568.
[53] Id. at 569.
[54] Id. at 570.

15

state action could create issues in the Trustee's future litigation.[55] The Trustee invokes W.R. Grace for the proposition that record taint supports a finding of irreparable harm.[56] The W.R. Grace court considered whether the litigation "could interfere with the reorganization of the debtor."[57] These are chapter 7 cases. The Debtors are not reorganizing. W.R. Grace protected a chapter 11 debtor exposed as a defendant in the enjoined litigation and measured harm against the likelihood of a successful reorganization, neither of which is present here where the Trustee, who is a stranger to the state court action, asserts that the action will taint a record by which she is not bound.

Reilly therefore supplies the operative standard, requiring the Trustee to show that she is more likely than not to suffer irreparable harm. The indemnity theory that supported a stay in American Film Technologies is absent here, because the Trustee faces no indemnity exposure from the Karr Action.[58] Here, the Trustee argues that the prosecution will "interfere with the Trustee's exclusive authority to prosecute estate claims."[59] Of course, that returns to the initial issue of whether the claims in the Karr Action are estate property and does not address whether non-

---

[55] See Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.), 40 B.R. 219, 225 (S.D.N.Y. 1984) ("Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time.").
[56] The Trustee also cites to Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs., Inc.), 175 B.R. 847, 855 (Bankr. D. Del. 1994), but that case imposed an automatic stay where the litigation at issue exposed the trustee to collateral estoppel as to its possible indemnity obligations, and no indemnity obligations are at issue here.
[57] In re W.R. Grace & Co., 115 F. App'x at 570.
[58] Am. Film Techs., 175 B.R. at 855.
[59] Mem. of Law in Supp. p. 18.

estate claims should be enjoined. While there could be a concern that some evidence in the litigation at issue could affect a future action brought by the Trustee, this concern is speculative and does not meet the <u>Reilly</u> standard of being "more likely than not."[60]

## IV.   CONCLUSION

The Trustee has failed to prove that the claims in the Karr Action are estate property. For that reason, the automatic stay is inapplicable to the Karr Action. In addition, because the Trustee has failed to meet its burden of demonstrating a probability of success on the merits and irreparable harm, the Trustee cannot demonstrate that the Karr Action should be enjoined under section 105. The Trustee's motion is denied. An appropriate order will follow.

Dated: June 30, 2026
Wilmington, Delaware

_____
Thomas M. Horan
United States Bankruptcy Judge

---

[60] <u>Reilly</u>, 858 F.3d at 179.